## HOWELL. *v.* WESTERN RAILROAD COMPANY.

1. Where a railroad company issues its bonds, and mortgages its property to secure the· payment of them and of the semiannual instalments of interest thereon, as they respectively fall due, under the authority of an act of the legislature, which declares that the bonds shall not mature at an earlier period than thirty years, a provision in them, that, upon a failure to pay any coupon thereto attached, when presented at the place of payment, and a continued default thereon for six months. the whole sum mentioned in the bond shall be.ome due and payable, is void.

2. In such a case, the mortgage may provide that it shall be foreclosed upon non-payment of interest. When suit in foreclosure is brought, if the sum ascertained to be due on the coupons be paid within such reasonable time as the court shall appoint, no further proceedings in the suit can be had until there is another default; if the sum be not so paid, a sale of the property, with a foreclosure of all the rights subordinate to the mortgage, should be ordered, with a direction to bring the proceeds into court, when, in distributing them, the sums secured by the mortgage must be protected, according to their respective priority of lien.

APPEAL from the Circuit Court of the United States for the Eastern District of North Carolina.

*Mr. A. S. Merrimon* for the appellant.

*Mr. W. N. H. Smith, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant in this suit is the owner of five bonds of $1,000 each, issued by the defendant corporation, and he seeks the foreclosure of a mortgage on the railroad and its appurtenances given to secure their payment. These are part of an issue of like bonds to the amount of $900,000, made at the same time, to wit, Oct. 31, 1870, payable thirty years after date, with coupons for interest attached, at the rate of eight per cent per annum.

Very few of these bonds were ever sold or put into circulation. All that have been, except these held by plaintiff, have either been taken up or are under the control of the company. The face of each bond contained a provision, that, on the failure to pay any coupon when presented at the place of payment, and continued default thereon for six months, the whole sum mentioned in said bond became due and payable, and the mortgage deed contained a provision that a like failure as to any one coupon of any single bond should make all the bonds become due and payable.

On the back of each bond was printed the act of the legislature of North Carolina, which authorized the corporation to make these mortgage bonds, which declares that " said president and directors are hereby authorized and empowered to issue the mortgage bonds of said company in sums of not less than $100 each, and not exceeding in amount $900,000, and to be negotiated at not less than par, and not to mature at an earlier period than thirty years," &c.

Many issues are raised by the pleadings, which are not necessary to be considered here. We shall confine ourselves to two questions, which are all that we deem appropriate to our purpose. The first of these is, whether the plaintiff is a *bona fide* holder for value of the bonds on which he sues. There is some reason to infer that Rogers, who was one of the trustees of the mortgage, and the banker who was expected to negotiate the bonds, and with whom they were deposited, was not a rightful holder of them, though it is asserted that they were paid to him for services to be performed as trustee in the mortgage. He, however, never performed any services, no bonds were ever negotiated, and the arrangement by which he held these bonds as his own does not appear to have been authorized or approved by the board of directors of the company.

This, however, is immaterial; for, from the testimony before us, we are compelled to hold that Howell, the complainant, was a *bona fide* purchaser of them for value of Rogers, without notice of any defect in his title. The only evidence on this subject found in the record is his own deposition, in which he states unequivocally that, on a settlement made by him with Bayne & Co., who were his bankers, he took these bonds in absolute payment of money due him, at the rate of seventy-five cents on the dollar, and had no notice of any thing wrong in the title of Rogers. This testimony is uncontradicted and conclusive.

The other question relates to the validity of the bonds as affected by the provision of the statute, that they should not mature at an earlier period than thirty years, whereas the bonds provide that on failure to pay a single interest coupon they shall mature in six months thereafter, if it is still unpaid. The provision was, as we have said, printed on the back of the bond, and imparted to every purchaser or holder of it the fullest notice of its nature.

The provision, in our opinion, differs widely from a mere direction as to the length of the time the bonds should run or the period when they should be made payable.

Such a direction or provision in an act authorizing a corporation to issue bonds is not in general inconsistent with a contract that, if the interest is not paid as agreed, the holder may treat

the whole sum as due. The language of this statute is not that these bonds are to be made payable in thirty years, or payable at a given time, and there is no direction as to the terms in which that is to be expressed. They may be made to run fifty or a hundred years; but however worded or expressed, they are " not to mature at an earlier period than thirty years." We construe this as an express enactment that they shall not mature earlier. No matter what device the parties interested may resort to, nor what form of language may be inserted in the bond, the principal sum of the bond shall not become due until the expiration of that period. The legislature had an undoubted right to annex to the power which it conferred of making these mortgage bonds this absolute condition, and they have used language which we can construe in no other way.

We do not see how a condition of the contract by which the bonds can be made to mature in one year can be valid, when the only authority to make the contract at all is the statute we have cited. But while this condition is invalid, it does not avoid the remainder of the contract, which is complete without it, and the agreement to pay interest semiannually is specifically authorized by the statute.

The company, therefore, had a right to mortgage their property for the payment of these instalments of interest as well as principal, and to make it one of the provisions of the mortgage, that it might be foreclosed if these instalments were not paid as they fell due.. There can, in fact, be but one decree of foreclosure of the same mortgage on the same property, and it is a necessity of that foreclosure, under the principles of the Court of Chancery, that all the sums secured by that mortgage must be protected according to their priority of lien.

We are of opinion, then, that there is due from the railroad company to plaintiff the amount of his overdue and unpaid coupons.

For this sum, whatever it may be, he has a right to a decree *nisi*, according to the chancery practice, — a decree which will ascertain the sum so due, and give the company a reasonable time to pay it, say ninety days or six months, or until the next term of the court, in the discretion of that court. If this sum is not paid, the court must then order a sale of the mortgaged

property, with a foreclosure of all rights subordinate to the mortgage, with directions to bring the purchase-money into court. If the case proceeds thus far, the plaintiff will have a lien on the money thus paid into court, not only for his overdue coupons, but for his principal debt, and it must be provided for in the order distributing the proceeds of the sale. If, however, the company shall pay the sum found due in the decree *nisi,* no further proceeding can be had until another default of interest or of the principal.

In this manner full justice will be done the appellant, and no wrong to the appellees.

*Decree reversed, and the case remanded with directions to proceed in conformity to this opinion.*