## *ALANSON CAPEHART v. LOUIS F. DETTRICK.

*Mortgage—Foreclosure Proceedings—Statute of Limitations— Proceedings in rem and in personam.*

1. Where a deed of trust, made to secure a series of notes due at different times, provides that in default of payment of the same or any part thereof at maturity, then the whole shall become due and payable; *Held*, the only effect of the provision is to allow foreclosure upon a default, the proceeds to be applied to all the notes at once, and not to start the running of the statute of limitations, against the notes not due, from the time of such default.

2, The limitations prescribed for personal actions do not apply to the remedy afforded in a court of equity by a foreclosure; *hence* where a debt, which is barred by the statute, is secured by a mortgage or any collateral security which is not barred, the mortgagee may enforce the remedy by foreclosure proceedings, or his lien upon the collaterals.

3. The statute of limitations defeats the remedy but does not discharge the debt.

4. In this state, a mortgage is not considered as merely subsidiary to the debt, but is a direct appropriation of property to its payment, and may be enforced by a direct proceeding to subject the property in satisfaction thereof, without reference to the personal remedy which is given by the note.

(*Murphy* v. *McNeill*, 82 N. C., 221; *Lewis* v. *McDowell*, 88 N. C., 263, cited, commented on and approved.)

CIVIL ACTION, tried on exceptions to a referee's report, at Fall Term, 1882, of NORTHAMPTON Superior Court, before *McKoy, J.*

This action, originally commenced by Alanson Capeheart against Asa Biggs and Kader Biggs, constituting the partnership firm of Kader Biggs & Co., was for an injunction to restrain them from making sale under a deed in trust to

*Mr. Justice MERRIMON having been of counsel did not sit on the hearing of this case.

secure his indebtedness to them, and meanwhile for the statement of an account in order that the amount due be ascertained. The controversy between these parties has been adjusted, and Louis F. Dettrick was allowed to intervene and assert his claims as a creditor of the said Alanson Capeheart, and his right to enforce the payment of certain notes executed by James Capehart to his father, the said Alanson Capehart, secured in a deed in trust made by the former to the latter, which said notes were held as collateral security for the indebtedness of said Alanson Capehart.

The subject matter of this superseding and new controversy introduced by said Dettrick was referred to Spier Whitaker, who in due time made his report, and therein from the evidence accompanying, finds the following facts:

On February 11th, 1876, the said Dettrick held and owned five several notes, not under seal, executed by said Alanson Capehart to the Bradley Fertilizer Company, and by it transferred, of dates and amounts and maturing as follows:

One, dated on June 30th, 1875, at 5 months, for $600.

A second, of same date at 6 months, for $600.

A third, dated on July 10th. 1875, at 5 months, for $600.

A fourth, dated on July 20th, 1875, at 4 months, for $705.60.

A fifth, of same date, at 5 months, for $600.

On the same day this indebtedness subsisting, subject only to a credit of $760.18 paid on the 16th day of December, 1875, the said Alanson Capehart, to secure the same, assigned and delivered to said Dettrick fourteen promissory notes made by the said James Capehart to the assignor, Alanson Capehart, of dates maturing, and in amounts as follows:

One, dated January 1st, 1876, due at one year, for $7,500.

Six, of the same date, due. respectively at 2, 3, 4, 5, 6 and 7 years, each in the sum of $5,850.

Seven, of the same date, due respectively at 8, 9, 10, 11, 12, 13 and 14 years, each in the sum of $5,300.

Subsequently the said Alanson Capehart became further indebted to the said Dettrick by account for the sum of $375.99, with interest thereon from the 26th day of January, 1877.

To provide for and secure the aforesaid fourteen notes, on the day of their execution, the said James Capehart, by deed, conveyed to the said Alanson Capehart a valuable tract of land lying in Northampton county, upon trust that if the notes, as each becomes due, shall be paid off and discharged, the deed shall become inoperative and void; but should there be default in the payment of the said debt or any part as either may become due, " then the whole shall become due and payable, and this deed shall remain in force, and the said party of the second part, or in case of his absence, death or refusal or disability in any wise, then the acting sheriff of Northampton county, at the request of the legal holder of the said notes, may proceed to sell the property, herein before described, or any part thereof, at public vendue to the highest bidder at the court house door in the town of Jackson," &c.; " and such trustee shall, out of the proceeds of said sale pay first the cost and expenses of executing this trust, including legal compensation to the trustee for his services, and next shall apply the proceeds remaining over to the payment of said debt or so much thereof as remains unpaid, and the remainder, if any, shall be paid to the said party of the first part, or his legal representative.''

The referee finds that the said Alanson Capehart has not promised to pay his indebtedness to said Dettrick at any time within three years next before the bringing this suit, and that the fourteen secured notes are due and unpaid.

From these facts the referee deduces and finds as conclusions of law—

1. That the recovery of the indebtedness of the said Alan-

son Capehart to the said Louis F. Dettrick is barred by the statute of limitations ;

2. That said Alanson Capehart is entitled to the possession of the fourteen notes described and secured in the deed ; and

3. That the said Louis F. Dettrick take nothing by his suit, and that said Alanson Capehart recover his costs against him and the surety to his prosecution undertaking.

The said Louis F. Dettrick excepts to these findings of law, and his exceptions being overruled and the report confirmed, and judgment rendered accordingly, he appeals to this court.

*Messrs. R. B. Peebles* and *Hinsdale & Devereux* for plaintiff.
*Messrs. W. Bagley, Mullen & Moore, T. C. Fuller* and *E. C. Smith,* for defendant.

SMITH, C. J., after stating the above. There are two material propositions of law involved in the rulings made by the referee and affirmed by the court, which the appeal requires us to examine and decide.

1. The series of notes mentioned in the deed, though upon their face many of them maturing in the future, have had the time of payment accelerated by a provision therein, and are now due and belong to said Alanson Capehart.

2. The effect of the lapse of time in barring a recovery on his indebtedness to the said Dettrick exonerates the collateral securities assigned to the latter from the lien of the indebtedness so barred, and entitles the debtor to their surrender.

The provision in the deed to which is ascribed an effect in hastening the maturity of the notes is, that if the debtor Alanson Capehart fail or refuse to pay the said debt or any part thereof, when the same or any part thereof shall become due and payable, according to the true tenor, date and

effect of said notes, then the whole shall become due and payable, and this deed shall remain in force."

This clause, thus interpreted, is in direct conflict with the form of the notes themselves, while they and the securing deed were executed at one and the same time. Can it be supposed the parties intended thus to introduce a secret clause into negotiable instruments, upon their face not appearing, by which they were to become due and the statute put in motion, so as to defeat a recovery, before, upon their expressed terms, the money could be demanded?

Could an endorsee suing before maturity sustain his action by showing that one of the series had become due and was not paid, and the deed which is supposed to effect the assumed change upon the happening of such a contingency?

We are clearly of opinion that this is not the intent of the parties, nor the legal operation of the deed. The force of this provision is spent in allowing a foreclosure of the mortgage and a sale of the property upon any default of the debtor in meeting his several obligations, and, when sold, in at once appropriating the proceeds to the payment of all the notes, instead of successive fragmentary sales, and instead of leaving the funds received in excess of the over-due notes, to await an application at a distant day, when others become also severally payable.

It is only for the prompt enforcement of the right to sell, conferred upon the mortgagee, that the notes are declared to "become due and payable" when the debtor fails to pay any of them when he promises to do so; and then it is that the "deed shall remain in force" and the mortgagee may exercise his right of sale.

This construction of the deed and of its operation upon the secured debts is sustained by the opinion and ruling of the supreme court of the United States in *Howell* v. *Western R. R. Co*, 94 U. S. Rep., 463. There, the bond which was

issued under a statute that required it "not to mature at an earlier period than thirty years," was so drawn that the whole amount became payable upon a continued default in payment of interest for six months, and a similar provision accelerating payment was contained in the mortgage given for its security.

The clause in the bond which contravened the statute was declared to be a nullity, and, thus divested of the objectionable feature, was held to be operative, the court saying that "the company had a right to mortgage their property for the payment of these instalments of interest, as well as principal, and to make it one of the provisions of the mortgage that it might be foreclosed if these instalments were not paid as they fell due."

This could not have been, if the effect of the mortgage was to insert in the bond a provision which, but for its nullity, would have been a fatal defect in it as an obligation.

There is reason for this in the fact that unless the appropriation can be made of the proceeds of sale to the unmatured notes, the excess above the sum required in payment of such as had become due, would be idle in the hands of the mortgagee to await the maturity of the others, to the great loss of the debtor, as he was entitled to no portion of the fund until all the notes were paid. We are therefore clearly of opinion that the obligation of the notes, as such, remains unaffected by the deed, and it only confers power upon the mortgagee to sell upon any default, at his election, and, where he does sell, to pay all the secured notes as well such as were, as such as were not then due.

The next inquiry to be made is as to the effect of the running of the statute against the debt due to Dettrick, upon the collaterals which had been, contemporaneously with the making of the notes to him on February 11th, 1876, conveyed by deed accompanied with delivery, and upon the lien thus acquired. The assignment made in

Baltimore has been duly proved and registered in North-ampton county, and includes not only the notes but also the mortgage security given by said James Capehart.

Can the collaterals thus held by Dettrick be retained by him after, from delay, he is precluded from enforcing the indebtedness to himself by action against. Capehart, or is his lien on the collaterals lost and he bound to surrender them to his debtor?

It is to be observed that the deed of assignment recognizes and admits the indebtedness of the said Alanson Capehart to Dettrick as a subsisting fact, while not distinguishing its constituent parts or the aggregate specific amounts, although at the same time the five notes were executed.

Without inquiring whether this recognition in an instrument under seal of the existence of the indebtedness has the effect of lifting it to a higher plane, not reached by the statute which limits to a narrower period the action founded on a parol contract, and assuming that the action upon the notes could not surmount the barrier interposed to their recovery, the inquiry meets us—whether this will deprive the creditor of the means of making his debt out of the securities in his hands, which are not thus barred, and can be enforced against the maker under the deed of trust.

It is plain, if an action at law were instituted upon the over-due notes assigned, as the running of the statute begins as to each as it falls due, but few would be defeated by the defence under it; but however this may be as to such, when attempted to be enforced as personal obligations, it by no means follows that payment may not be coerced as to them and all others out of the appropriated property conveyed in the mortgage. The authorities are full and ample that the limitations prescribed for personal actions do not apply to the remedy afforded in a court of equity by a foreclosure sale and application of the proceeds to the notes.

There is a clear distinction between the loss of a particular remedy at law and the extinguishment of the debt.

"I am clearly of opinion," remarks LORD ELDON in *Spears* v. *Hartley*, 3 Esp. 31, " that though the statute of limitations has run against a demand, if the creditor obtains possession of goods on which he has a lien for a general balance, he may hold them for that demand *by virtue of his lien*."

" The creditor receiving a mortgage of real estate as collateral security for the payment of a negotiable promissory note," declares a recent author, " has a double remedy to recover his debt—a suit in equity to subject the land to its payment, and an action at law upon the note, and a recovery may be had on the one, although there may be some technical objection or difficulty as to a recovery upon the other. The statute of limitations affecting only the remedy on the note, the debt itself, which the mortgage is given to secure, remains unsatisfied, and an enforcement of the security to secure the payment of such debt is permitted upon equitable rules. Colebrooke on Col. Securities, § 156, citing numerous cases to support the proposition, which are found in note 1.

Says the same author in section 101, " the statute of limitations defeating simply the remedies upon a debt does not operate in law as a discharge of the debt itself, which remains ; so that where negotiable instruments have been deposited as collateral security for the payment of a loan or debt, the pledgee is entitled to retain possession of the same as against the pledger, *notwithstanding the statute of limitations might be pleaded to an action on the original note*.

The doctrine is thus declared in an opinion by the Chief Justice in *Belknap* v. *Gleason*, 11 Con., 160; *Ivey* v. *Adams*, 26 Maine, 330; *Grant* v. *Burr*, 54 Cal., 208 ; *Ipswich Manufacturing Company* v. *Story*, 5 Metc., 310 ; *Fisher* v. *Mossman*,

11 Ohio, 42; *Richmond* v. *Aiken,* 25 Vt., 324, and in many others.

The opinion of Chief Justice WILLIAMS in the case first cited is so full, explicit and conclusive in its reasoning that we reproduce a portion of what he says: " That no action at law will lie upon these notes, if the statute of limitations is pleaded, cannot be doubted." Then after a reference to cases in which it is declared that equity will not aid claims barred at law, he proceeds: " But these cases do not prove, nor does the principle require that when a creditor holds different instruments to secure the same debt, if the remedy upon one is barred at law, the remedy upon all is barred in equity. * * What analogy requires a court of equity to say that the remedy at law is gone, and there is none in chancery? One remedy is indeed gone, and only one. * * * The statute of limitations are statutes of repose. They suspend the remedy but do not cancel the debt."

So remarks Chief Justice SHAW in the case reported in Metcalf: " A mortgage is a security for the payment of money for which the creditor has a personal obligation in common form and also a pledge of real estate, and he may pursue either of these remedies—both being securities for one and the same debt—until the debt is paid; *and although one may be lost or barred, it does not destroy his right to pursue the other."*

" The creditor may abandon the personal obligation of the debtor," is the language of REDFIELD, C. J., in *Richmond* v. *Aiken,* " without affecting his security upon the land, that is, he does not lose his right to pursue the land by allowing the security to become barred by the statute of limitations."

There are a few states where the contrary doctrine prevails, as mentioned by Mr. Colebrooke in section 157, the mortgage being regarded as merely subsidiary to the debt,

an incident to the principal, the shadow which follows and depends upon the substance.

This is not the view taken in this state of these relations, nor is it in harmony with the general course of the adjudications elsewhere. The note evidencing the debt is the personal obligation of the debtor—his undertaking; the mortgage is a direct appropriation of property to its security and payment. The first is enforced in a personal action; the other in a proceeding to subject the property thus appropriated to the satisfaction of the debt. These remedies against the person and property specifically assigned are entirely different; and, while subsisting and concurrent, either may be resorted to. The loss of one does not of itself cut off a resort to the other.

The opposite doctrine had been announced in New York, of which case Chancellor WALWORTH, thus speaks in *Heyer* v. *Pryer*, 7 Paige, 465: "What was said by SUTHERLAND, J., in *Jackson* v. *Socket*, 7 Wend., 94, that a mortgage to secure a simple contract debt was presumed to be paid in six years, because the statute of limitations might at the expiration of that time be pleaded to a writ on the note, *cannot be law.*

In *Murphy* v. *McNeill*, 82 N. C., 221, the suit was for the foreclosure and sale of property conveyed in a mortgage to secure a note within the exclusive jurisdiction of a justice of the peace, and it was objected that the action was not originally cognizable in the superior court, because the debt was less than $200. In answer to this suggestion the court say: "The action is not founded on the contract merely, but on an equity growing out of the relation of mortgagor and mortgagee, to have the mortgaged premises, in case of default, sold for the satisfaction of the debt"—thus distinguishing between the two remedies, legal and equitable, open to the creditor.

The principle is recognized in our own present statute,

23

limiting the times within which actions may be brought on different obligations. The period prescribed for actions on contracts, not under seal, against the principal debtor is three years (THE CODE, §155), while an action for the foreclosure of a mortgage of real estate may be brought within ten years, after forfeiture, or after the last payment, or after the power of sale becomes absolute, §152.

It is proper in this connection to notice a remark made in the opinion in *Lewis* v. *McDowell*, 88 N. C., 261: "It is true if the debt, separately existing, has been discharged, or is not recoverable from lapse of time, the relief could not be obtained, since the purpose of the mortgage or retained title is only a security for it." The "lapse of time" has reference to an unrepelled presumption of payment, though the general words are sufficiently comprehensive to take in a debt not paid, but to an action for the recovery of which the statute is a bar. Thus understood and restricted, the ruling is in harmony with the present opinion and the prevailing current of judicial authority.

There is error, therefore, and so it must be declared, in the conclusions of law announced in the report and affirmed by the judge, that,

1. All the notes of James Capehart are now due, this being true only as to such as have matured;

2. These notes belong to Alanson Capehart and he is entitled to have them restored by the said Dettrick, in whose hands they are;

3. That the said Alanson Capehart go without day and recover his costs of said Dettrick and his surety to the prosecution bond.

The exceptions of the appellant to the said rulings are sustained, and the cause will be remanded for further proceedings in the court below in conformity to the law as declared in this opinion.

Error.                                                    Reversed.