THE CENTRAL TRUST COMPANY OF NEW YORK, AS TRUSTEE, ETC., RESPONDENT, *v.* THE NEW YORK CITY AND NORTHERN RAILROAD COMPANY AND OTHERS, APPELLANTS.

*Mortgage, allowing the mortgagee to enter into possession after a default of twelve months — construction of it — when the mortgage may be foreclosed at once on a failure to pay the interest.*

The defendant, a railroad company, executed a mortgage upon its road to the plaintiff, as trustee, to secure the payment of bonds issued by it. The mortgage provided, among other things, that if the company should make default in the payment of the principal moneys secured by the bonds, or any part thereof, " or in the due and punctual payment of the interest, or any part thereof, from time to time accruing and payable upon such bonds, or any of them, at the time and in the manner provided for payment of such principal or interest; " and if such default should continue for twelve months, then the trustee might enter into and take possession of the road, and might sell the same upon giving three months' notice of the time and place of sale. Another provision of the mortgage authorized the company to remain in the possession of the road until some default had been made in the payment of the principal and interest.

*Held,* that the provision authorizing the entry and sale by the trustee, upon the expiration of twelve months after the default of the company in paying the principal or interest, did not prevent the trustee from at once bringing an action to foreclose the mortgage, to collect any installment of interest falling due under the terms of the bonds, as soon as default was made in its payment.

APPEAL from an interlocutory judgment, entered upon an order overruling a demurrer to the complaint.

*Janes C. Carter,* for the appellants.

*William Allen Butler,* for the respondent.

DANIELS, J. :

The action has been brought to foreclose a mortgage executed by the New York City and Northern Railroad Company to the Central Trust Company of the city of New York, to secure the payment of bonds of the railroad company in an aggregate amount not exceeding the sum of $4,000,000. The interest upon the bonds which were issued became due on the 1st day of May, 1882, and it was for the purpose of collecting that interest which has since

remained unpaid, and foreclosing the mortgage and selling the mortgaged property, and out of the proceeds paying the indebtedness, that this action has been commenced and prosecuted. The summons was issued on or about the 1st of September, 1882, and the complaint was demurred to, by the appealing defendants, for the assigned reason that it did not state facts sufficient to constitute a cause of action.

A copy of the mortgage was annexed to and formed a part of the complaint. This mortgage declared and provided " that if the railroad company shall at any time make default in the payment of the principal moneys, or any part thereof, secured by or payable upon bonds issued by it, which shall be entitled to the benefit of the mortgage security of and under this indenture, or by and upon any of such bonds, or in the due and punctual payment of the interest or any part thereof, from time to time accruing and payable upon such bonds, or any of them, at the time and in the manner provided for payment of such principal or interest, as the case may be, in the said bonds or the coupons thereto attached, and if such default on the part of the railroad company shall continue for twelve calendar months after due demand for payment of such principal or interest, as the case may be, at the proper place for such payment, accompanied by due presentment of and offer to surrender the proper bonds or coupons, as the case may be, then after the expiration of such twelve months, and without any further demand or notice, the said party of the second part, as trustee as aforesaid, or its successor or successors in said trust is and are hereby authorized and empowered to and may, at any time or times and upon the written request of the holders of one-third in amount of all bonds issued hereunder and then outstanding, and upon being indemnified as hereinafter mentioned, it and they shall, either personally or by its or their agents or attorneys, by it or them thereunto authorized, enter into and take possession of the said railroad and demised railway hereby mortgaged or expressed so to be, with the appurtenances and the other premises and property, rights and interests embraced in and covered by the mortgage lien hereby created, and have, hold, use and enjoy the same, with the privileges and franchises thereunto respectively appertaining, and take and receive the income, tolls, freights, rents and profits

thereof and therefrom accruing, with the right to it or them, to rent, operate and use the said railroad and demised railway."

The mortgage further provided, in case of such continued default for the period of twelve months that the trustees should be empowered, upon at least three months' previous notice of the time of sale, to sell the mortgaged property and apply the proceeds in payment of the indebtedness of the company upon its bonds secured by the mortgage. It also provided for the purchase of the property at such sale by the parties themselves in interest and the reorganization of another railway company; and it was mainly because of these provisions that the demurrer to the complaint was interposed. This period of twelve months had not elapsed after the company had made default in the payment of its interest, before the commencement of the action to foreclose the mortgage and sell the mortgaged property, and as these provisions in the mortgage rendered the power of sale created by them dependent upon a continued default of twelve calendar months, it has been urged that an action brought before the expiration of that time for the foreclosure of the mortgage was premature.

But the right to commence and maintain such an action, in case of default in the payment of interest within this period of twelve months, has not been excluded by anything contained in the mortgage. Neither has it provided absolutely for the continued possession of the property by the mortgagor during this period of time. The mortgage, according to its own provisions, was given to secure the punctual payment of the interest as well as the principal of the bonds. By the express terms of each bond the company bound itself to pay the principal on the 1st day of May, 1910, and interest thereon at the rate of six per cent per annum, payable semi-annually on the first days of May and November, in each year, until the principal should become due. And it was further provided in the bond that in case the interest should remain unpaid or in arrear for twelve months after the time specified for its payment, the whole of the principal should become due and payable. By the language which was employed the company, therefore, became absolutely bound to pay the interest upon the indebtedness from time to time as it matured, and that would be sufficient to entitle the holder of the bond to maintain an action for the recovery of such interest as soon

as it accrued, and default should be made in its payment. The mortgage was given upon the same theory. One of the objects was to secure the payment of the semi-annual interest on the first days of May and November in each year, and the principal of the debt whenever default in the payment of interest should continue for the period of twelve months. And the mortgage is declared to have been given, "for the purpose of securing the due payment of the principal of the bonds proposed to be issued as aforesaid, and the interest to accrue thereon, according to the tenor and effect of the said bonds and the coupons or interest warrants thereto attached." To secure such payments the trustee or mortgagee was to have, and to hold, the property, franchises, rights and interests mortgaged, "in trust for the equal *pro rata* use, benefit and security of all the persons and corporations who shall at any time hereafter become, or be, the lawful owners, or holders, of the aforesaid bonds, to be issued by the railroad company, and which shall be entitled to the benefit of the mortgage security hereby provided, under or in pursuance of the provisions of this indenture."

It was further provided in the mortgage that the security should cease, determine and become of no effect, "if the railroad company shall well and truly pay and satisfy, or cause to be paid and satisfied, the principal and interest secured by, or payable upon, all and singular the said several bonds, to be issued by the railroad company, which shall be entitled to the benefit of the mortgage security hereby provided under or in pursuance of the provisions of this indenture, at the times and in the manner prescribed for the payment thereof in the said several bonds and the coupons thereto attached." By these provisions it was the evident purpose of the mortgagor to create a security for the payment of the interest on the bonds as that should from time to time accrue and become payable, and as an action could be at once maintained for the collection of the interest according to the terms of the bond, and the mortgage was given in part to secure the payment of that interest, the right to enforce it, whenever such a right of action should accrue, would seem legally and directly to follow; for in no other manner could the mortgage be made available as a security for the payment of the interest according to the terms contained in it. Its object in part was, as that was very clearly expressed, to secure the payment of

the interest as it from time to time should accrue upon the bond, and that could only be attained, under the circumstances, by an action of the description of that which is now before the court. The mortgagor obligated itself to pay semi-annual installments of interest as it matured upon the bonds, and the mortgage was in part given to secure precisely that payment, and no restriction was in any form imposed upon the effect of these provisions, which would prevent the creditors from making the security available in this manner. The clauses providing for an entry into and the use or sale of the mortgaged property by the trustee after a continued default for the period of twelve months, were designed to affect and qualify only this right of entry, possession and power of sale. If that should be resorted to by the trustee, then by the terms of the mortgage it could only be done after twelve months' default in the payment of the interest. But it was not provided in the mortgage, neither is it to be implied from any of the language made use of, that the creditors were to be deprived of the right of making the security available to themselves in any other manner than this, upon a default in the payment of the interest stipulated both by the bond and mortgage to be payable at the times therein mentioned. Neither did the mortgage provide for the continued possession of the mortgaged property by the mortgagor for this intervening period of twelve months. The provisions relating to that excluded the trustee from the stipulated right of entry, possession and sale when that might be insisted upon under these provisions, and that is all that was attempted to be expressed or accomplished by them. They did not declare or provide that an action to collect the debt and appropriate the security to its payment should not be instituted within the period of twelve months, but that was left entirely unqualified and unaffected by these provisions of the mortgage, and as the mortgage was also by its terms made as a security for the payment of the interest as it should accrue and become due, according to the tenor and effect of the coupons or interest warrants attached to the bond, the trustee had the right to enforce it for that purpose as soon as a default in payment was made. And that, it is also to be inferred, was the intention of the parties from the further provision contained in the mortgage that the company should remain in the

possession, use and enjoyment of the railroad and other property included until it " shall have made some default in the payment of the principal or interest secured by or payable upon the bonds issued by the railroad company, which shall be entitled to the benefit of the mortgage security of and under this indenture, or of some part of such principal or interest." The effect of this provision very clearly was to extend the absolute right of the mortgagor to the possession of the property no longer than it should pay the principal or interest secured and payable upon its bonds, and it is clearly to be implied from it that when the event of failure should arise, and default in the payment of interest should be made, that the right of the company to the possession, use and enjoyment of the property mortgaged should thereupon cease and determine, and that, with the other provisions, entitled the holders of the bonds to the appropriation and sale of the property by means of judicial proceedings for the payment of the over-due indebtedness. It is true that neither they nor the trustee could voluntarily enter into and take possession of the property under the other clauses contained in the mortgage, but as these clauses did not deprive the trustee of the right to collect the debt as it should become due, and the obligation to pay it in that manner was clearly and distinctly created, and one of the purposes of the mortgage was to secure payment of the interest as it matured, and the absolute right of the company to the possession of the property was limited to the performance of this obligation, the right to institute and maintain a foreclosure suit is clearly to be deduced from the mortgage.

A similar subject was considered in *Chicago, etc., Railroad Company* v. *Fosdick* (106 U. S., 47), and it was there said in the opinion of the court, that " inasmuch as by the terms of the first article, the conveyance is declared to be for the purpose of securing the payment of the interest as well as the principal of the bonds, and by the fourth article the mortgagor's right of possession terminates upon a default in the payment of interest as well as principal on any of the bonds, we are of opinion that, independently of the provisions of the other articles, the trustees, or on their failure to do so any bondholder, on non-payment of any installment of interest, on any bond, might file a bill for the enforcement of the security by the foreclosure of the mortgage and sale of the mort-

gaged property. (Id. 68.) And *Holden* v. *Gilbert* (7 Paige, 208), supports the same view.

This legal conclusion is particularly applicable to the present case and seems to be conclusive as to the proper construction which should be placed upon the mortgage. But beyond that it is also to be inferred, from the other portions of the mortgage itself, that the voluntary right of entry, possession and sale by the trustee, was not intended to be exclusive of the right to collect the debt as it matured in the ordinary course of legal proceedings. For that a sale might be made by virtue of such proceedings, appears to have been contemplated in the language employed providing for the re-organized company after it should be made; for it was not only provided that such a re-organization might take place after a voluntary sale under the power expressly vested in the trustee, but that it might also follow a sale made " by judicial authority." And this phraseology was again repeated in the power provided for the trustee to employ and retain counsel, agents or attorneys. By means of it the mortgagor appears to have contemplated not only that the property, rights and franchises mortgaged might be acquired by a sale under the power expressly providing for, but in addition to and without resorting to that it might also be acquired by the exercise of judicial authority over the mortgage, and that would ordinarily be limited to an action to foreclose the mortgage and sell the property mortgaged.

The right to prosecute such an action and to sell the property under the judgment which might be obtained in it upon a default in the payment of interest, was considered and sustained in *Howell* v. *Western Railroad Company* (94 U. S., 463), and it is in strict accordance with the practice of the courts in this State, permitting property mortgaged to be sold under a judgment in an action for the foreclosure of the mortgage, even where only a part of the mortgage debt may have matured and become payable.

This case is clearly distinguishable from that of *Second American Building Association* v. *Platt* (5 Duer, 675), for there the right to proceed for the collection of the amount claimed had been expressly limited and restricted to the period specified in the mortgage; while in this case no such restraint, nor any other, was imposed upon the trustee preventing the enforcement of the secu-

rity, by legal proceedings, for the payment of the indebtedness as it should mature and become due. On the contrary, the mortgage created precisely that security, and as no right of possession in the railway company to the property was secured after a default should be made in payment, it must have been intended that it might be made available in the ordinary manner for the purpose of carrying this object into effect. By the bond the interest became absolutely due and payable at the times therein mentioned for that purpose, and the mortgage has as absolutely secured that payment, and these provisions together with that rendering the right of the company to the possession of the property dependent upon such payment, were sufficient to authorize the commencement of this action for the collection of the interest and the sale of the property mortgaged to secure its payment.

The judgment from which the appeal has been taken was authorized by the facts appearing in the case, and it should be affirmed, with the usual costs and disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.