McFadden *v.* Mays Landing and Egg Harbor City R. R. Co.

CHARLES McFADDEN

*v.*

THE MAYS LANDING AND EGG HARBOR CITY RAILROAD
COMPANY et al.

1. The holder of any one of a series of bonds secured by a mortgage made to trustees, may, on refusal of the trustees so to do, maintain a suit for the foreclosure of the mortgage, for default in the payment of interest.

2. Such suit ordinarily should be brought by the bondholder in behalf of himself and all other bondholders, but an averment to this effect is unnecessary when default has been made only on the bonds held by complainant.

3. Powers given, by the terms of the mortgage, to the trustee after default for a stated period in the payment of interest, to take possession of the mortgaged property and sell the same, and apply the proceeds to the payment of interest and principal, do not change the construction of the mortgage, as to the time when the principal becomes due, so as to authorize a foreclosure for the principal as well as interest.

4. Powers of sequestration and sale, given to the trustee, are cumulative remedies, which do not affect the established remedies of the courts—when a bondholder, on refusal of the trustee to act, prosecutes a suit in his own name, for the payment of overdue interest, by the foreclosure of the mortgage, he is restricted to the usual remedies of the court appropriate to that purpose.

5. On foreclosure for unpaid interest, the principal not being due, only so much of the property as may be necessary to raise the amount due should be sold, if the property is divisible without material injury to the security.

6. Unless it appears to the contrary, the court will assume that the entire plant of a railroad, embracing its real and personal estate and franchises, is an entirety, the elements of which are so essentially intermingled, and each so indispensable to the value of the other, that they cannot be separated without material injury to the value of each.

On final hearing on pleadings and proofs.

*Mr. Peter L. Voorhees* and *Mr. William S. Gummere,* for the complainant.

*Mr. Martin P. Grey* and *Mr. Samuel H. Grey,* for the defendant railroad company.

McFadden v. Mays Landing and Egg Harbor City R. R. Co.

GREEN, V. C.

This suit is to foreclose a railroad mortgage. The complainant alleges that he is the owner and holder of nineteen bonds of $500 each of the Mays Landing and Egg Harbor City Railroad Company, on which there has been default in the payment of the semi-annual interest since the 1st day of October, 1883. These bonds are part of a series of seventy-five bonds, each of $500, numbered consecutively from one to seventy-five, amounting in the aggregate to $37,500, and payable October 1st, 1900, with interest at the rate of seven per cent. per annum, payable half yearly, on the 1st days of April and October in each year, on presentation and delivery of the proper coupon thereto annexed, at the office of the Camden and Atlantic Railroad Company, in Camden. A mortgage, dated October 1st, 1871, was executed by the said company, party of the first part, to John H. Doughty and Israel S. Adams, trustees, party of the second part, by its terms " to secure the payment of the principal and interest of the said bonds, according to the tenor thereof, and of the coupons thereto annexed," and embracing in the words thereof—

" all and singular the railroad, the party of the first part is, by law, authorized to construct, from the town of Mays Landing to the city of Egg Harbor City, in the county of Atlantic, including all the railway branches, ways, rights of way, all tracks, bridges, viaducts, culverts, fences, depots, station-houses, engine-houses, car-houses, freight-houses, wood-houses, water stations, machine shops and all other buildings and structures with the lands appurtenant to the same, and all locomotives, tenders, cars and other rolling stock or equipments, and all machinery, tools, implements, fuel, materials and all other personal property of every nature, kind and description whatsoever, now held or hereafter to be held or acquired by said company, its successors or assigns, for use in connection with the railroads or branches of said company or any part thereof, or for the business of the same, and also all franchises connected with or relating to the said railroad or branches, or to the construction, maintenance or use of the said railroad or branches, and all the franchises, rights and things of whatsoever name or nature, now held or hereafter to be acquired, by the said party of the first part, or its successors, together with all and singular the tenements, hereditaments and appurtenances to the said railroad, branches, lands and premises or either thereof belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, tolls, incomes, revenues, rents, issues and profits and also all the estate, right, title, interest,

12

property, possession, claim and demand whatsoever, as well in law as in equity, of the said railroad company of, in and to the same and any and every part thereof with the appurtenances, to have and to hold the said above mentioned and described railroad, branches, real estate, personal property and premises with the appurtenances unto the said party of the second part, their heirs, executors, administrators, successors and assigns to their only proper use, benefit and behoof in trust."

*First.* Until default in the payment of principal or interest, or some other requirement, the company or its assigns to be permitted the possession of the property.

*Second.* In case default should be made in the payment of any interest, when it became payable, and such default continued for three months, or in case default was made in the performance of any other covenant, and should continue for a period of six months, it should be lawful for the trustees, upon the written request of the holder or holders of ten bonds, to take possession of the mortgaged property and operate the road, and, after deducting expenses, to apply the balance, first, to the payment of interest, next to payment of principal so far as due, and pay the residue to the company.

*Third.* In case of either of said defaults made, and continuing for six months, the trustees also to have power of sale under conditions specified.

The defeasance was on condition that the said company

"shall and do well and truly pay, or cause to be paid, to the several and respective holders of said bonds, the principal and interest thereof, on the several days and times therein appointed for the payment thereof, according to the intent thereof, on the several days and times therein appointed for the payment thereof, according to the intent and meaning thereof, without any fraud or further delay" &c.

The bill alleges that demand was made by the holder of the coupons of the bonds in question for the payment of the interest falling due October 1st, 1883, and thereafter semi-annually as the same fell due, to and including October 1st, 1885, and default was made in said payment, and that none of the said semi-annual payments of interest have been since made, and that each and

every of them have remained payable and unpaid for more than six months—

"by reason of which said defaults in the payment of said interest and by virtue of the terms and conditions of the said mortgage, the whole principal sum mentioned in the said bonds so issued as aforesaid, and intended to be secured by said mortgage, and all arrears of interest thereon has become and is due, payable and collectible."

The bill alleges that subsequent installments of interest were not paid, demand having been duly made and payment refused.

Israel S. Adams, one of the trustees mentioned in the said mortgage, has departed this life, leaving John H. Doughty as the surviving trustee.

April 22d, 1886, the complainant made a written request upon the surviving trustee to enter into and upon, and take possession of, the said railroad, and operate the same, and pay to the complainant the said interest due on said bonds, respectively, as aforesaid, or to proceed and sell the said railroad under the provisions of the said mortgage, and to pay the complainant the interest-money due on his said bonds, or to proceed and foreclose the said mortgage, sell said railroad, and distribute the money arising from said sale to said bondholders according to the provisions of his aforesaid mortgage, and thereby agreed to indemnify and save harmless the said surviving trustee of and from all costs and charges which should arise by reason of such proceedings to sell, or foreclose said mortgage. The said John H. Doughty, surviving trustee, positively refused to take possession and operate said railroad, or to sell the same, or to take any action as requested by the complainant.

The bill alleges that the Mays Landing and Egg Harbor City Railroad Company is not possessed of any rolling stock, steam engines, cars or other appurtenances, and that no trains, cars or engines are now being run on said road; that the said railroad appears to complainant to have been abandoned, and is not now regularly used as a railroad, and prays that the defendants may be decreed to pay to the complainant the principal sum so due on his said bonds, and the interest due, and to grow due, thereon,

and complainant's costs and charges in this behalf sustained, by a short day to be appointed by the court, and that in default thereof the said defendants, and all persons claiming or to claim under them, or any of them, may be foreclosed of and from all right, title and equity of redemption, and that the premises, with the appurtenances, may be sold, and that, out of the moneys arising from such sale, they shall pay the said principal and interest due on said bonds, and also the costs of suit.

The answer of the defendant company admits the execution and delivery of the mortgage, and the acceptance of the trust by the trustees; the construction of the railroad from Mays Landing to Egg Harbor City, and the borrowing of $37,500 for the purposes of such construction, and the issuing of the bonds.

Defendants' answer further says that the railroad was built at the instance and for the benefit of the Camden and Atlantic Railroad Company, under an agreement in writing between the two companies for that purpose; that the mortgage was executed and delivered by the defendant in part performance of that agreement, and that the bonds were issued thereunder and delivered by the defendant to the Camden and Atlantic Railroad Company, who negotiated the same, and applied the proceeds thereof in part payment of the expense of constructing the railroad; and that, in further performance of that agreement, the defendant company executed a lease upon its said railroad to the Camden and Atlantic Railroad Company, which company, immediately upon the completion of said railroad, entered into possession thereof under said lease, for a term of nine hundred and ninety-nine years, and has ever since been in possession thereof as lessee under said lease; that the Camden and Atlantic Railroad Company, as one of the conditions of the lease, agreed to and did guarantee the payment of the said interest of the bonds issued under the mortgage, which are the same bonds claimed to be owned by the complainant, and the defendant, by the terms of the lease, agreed to accept, as part of the rent reserved, the coupons of the bonds which the Camden and Atlantic railroad paid.

The answer denies that the complainant is a purchaser for a valuable, or any, consideration of the bonds involved in this suit, or that he, in good faith, presented the coupons at the office of the Camden and Atlantic Railroad Company, when they were payable, and demanded payment, but avers that the bonds, if in the possession of the complainant, were purchased of or by the Camden and Atlantic Railroad Company with moneys of the said company, and placed in the possession of the complainant, solely for the purpose of using his name as an ostensible party, in pursuance of a scheme to foreclose the property in order to relieve the Camden and Atlantic Railroad Company of certain obligations. The answer, in developing this alleged scheme, gives a history of the construction of the Mays Landing and Egg Harbor City railroad, the execution of the bonds and the mortgage, the lease of the railroad, and delivery of the bonds to the Camden and Atlantic Railroad Company, the covenant of the lessee company to pay the interest on the bonds, as the rent reserved by the lease, its failure to pay the coupons as they matured, the institution of suits in the supreme court to compel said payment, the recovery of judgment and its affirmance in the court of errors and appeals. It avers that the failure to pay the interest on the bonds in suit was the default of the Camden and Atlantic Railroad Company, the alleged owner of the bonds, to pay the rent reserved, and insists that, under these circumstances, no such default in payments of interest, as would amount to a breach of the condition in said mortgage and justify the foreclosure for such breach, has occurred, and submits that the complainant is not entitled to claim the benefit of the breach of said condition, and to enforce foreclosure of said mortgage by reason of said alleged default.

It admits that the railroad has not been operated by said lessee company since the month of February, 1881, but says that the said lessee company has been, and now is, in possession of the said railroad, and charges that it has permitted the railroad to fall into decay, the bridges to become unsafe and useless, the ties to rot, and the road-bed to become seriously injured, claiming that, by reason of this voluntary and permissive waste by the

lessee, the value thereof as a security under such mortgage has been seriously impaired.

By an amendment to the answer, filed April 1st, 1891, the defendant says that by the terms of the said bonds, claimed to be owned by the said complainant, and also of the mortgage, the principal of the said bonds mentioned does not become due upon default of payment of interest on the said bonds, and denies that the complainant is entitled to file a bill for the foreclosure of the mortgage and sale of the mortgaged premises, to raise and pay the principal money, and denies that any proper application was made to the said trustee, or that the said trustee had any power, under the mortgage, to require payment of the principal money.

The defendant, by way of cross-bill, basing it substantially on the allegations of fact referred to, and the further allegation that in the lease the lessee company agreed not to foreclose, as holder of any bonds, for non-payment of interest, prayed an answer, without oath, to the cross-bill, and that the bonds claimed to be in the possession of the complainant may be declared to be the property of the Camden and Atlantic Railroad Company, and that the foreclosure suit of complainant may be decreed to be a fraudulent device of said Camden and Atlantic Railroad Company, whereby it is attempted to procure fraudulently the foreclosure of the mortgage and the fraudulent eviction of the said company as lessee from said demised premises, and that the non-payment of said coupons attached to said bonds, claimed by the complainant, may be decreed to be insufficient to establish a default, or breach of the condition in said mortgage warranting the foreclosure thereof, and that said bill may be dismissed.

The defences to this foreclosure may be shortly stated as follows: That the complainant is not the owner of the bonds in his possession; that they were purchased by and in effect are the property of the Camden and Atlantic Railroad Company; that this company is the lessee of the mortgaged property under covenant in the lease to pay a rent reserved, which was to be discharged by the payment of the coupons annexed to the bonds, and that this company, in said lease and as part of the agreement, also covenanted not to foreclose for default in the payment

of either the interest or principal; that the said Camden and Atlantic Railroad Company, being desirous of obtaining such legal advantage as it might from a foreclosure and sale, being prevented by its own agreement not to foreclose, has used the complainant to accomplish that which it had agreed not to do itself, or that the lessee company procured the complainant to possess himself of the bonds for the purpose of foreclosing the mortgage, in order to relieve that company from its covenants, and, by the amendment, that the principal is not due, and that complainant is not entitled to foreclose therefor.

It is unnecessary to consider the question of ownership further than to say that the evidence fails to establish that these bonds were purchased by the complainant with funds furnished to him by the Camden and Atlantic Railroad Company. He testifies positively that the purchase was made with his own money, and that he is the sole and only owner of the bonds, and there is no evidence to raise a doubt as to the truth of the statement.

The second line of defence is that the Camden and Atlantic Railroad Company has procured the complainant to put himself in a position to foreclose the mortgage, and thus relieve it from the inconvenience or loss incident to the operation of the road or payments under the lease.

The evidence gives color to this contention, as it appears that the complainant really made this purchase without any investigation of the security, and simply because he was told by an officer of the Pennsylvania Railroad Company and of the Camden and Atlantic Railroad Company to buy these bonds; that he was a contractor who had done much work for the first named railroad, and that he acted at the request of the gentlemen he named, expecting that he would not be permitted to lose any money. But if the contention of the defendant in this regard is admitted to its full extent, it furnishes no ground for refusing the complainant the relief he is otherwise entitled to. It attacks simply the motive of the complainant in bringing his suit. If he is the owner of these bonds and entitled to the accrued interest, he has the right to demand that the remedies given by the

law shall be enforced, no matter what motive may have prompted his purchase.

This principle is recognized by the chief-justice, in the case of *Davis* v. *Flagg, 8 Stew. Eq. 491,* and (at *p. 495*) he quotes with approval from *Morris* v. *Tuthill, 72 N. Y. 575,* as follows: " The motives of the former owner of the mortgages in selling or the plaintiffs in buying them are not material. The appellant has no concern with the consideration of the assignment. It is sufficient that the mortgage debt is due, and is now owned by the plaintiff. He may have bought the mortgages from motives of malice toward the defendant, and solely with a view to sue upon them, and the former owner, from a like motive, may have transferred them without consideration, but this would not constitute a defence to the action. The appellant can only arrest the action by paying the amount due or tendering the same and bringing it into court."

The complainant must be held to be the owner of the bonds in his own right, and having duly presented the coupons for payment and payment being refused, and having applied to the surviving trustee to take proceedings to collect what is due, and the trustee having refused to take any action whatever, is entitled to any remedy which the court furnishes to secure his rights. The right of the mortgagee to foreclose for overdue interest is clearly established, and it is now well settled that the holder of bonds secured by a mortgage given to trustees may, on refusal of the trustees so to do, institute proceedings to foreclose for the unpaid interest.

In *Chicago and Vincennes R. R. Co.* v. *Fosdick, 106 U. S. 47,* Justice Matthews (at *p. 68*) says : " Inasmuch as by the terms of the first article the conveyance is declared to be for the purpose of securing the payment of the interest as well as the principal of the bonds, and by the fourth article the mortgagor's right or possession terminates upon a default in the payment of interest as well as principal, on any of the bonds, we are of opinion that, independently of the provisions of the other articles, the trustees, or, on their failure to do so, any bondholder, on the non-payment of any installment of interest on the bond,

might file a bill for the enforcement of the security, by the fore-closure of the mortgage and sale of the mortgaged property. This right belongs to each bondholder separately, and its exercise is not dependent upon the co-operation or consent of any others, or of the trustees. It is properly and strictly enforceable by and in the name of the latter, but if necessary may be prosecuted without or even against them. It follows from the nature of the security, and arises upon its face, unless restrained by its terms." *Galveston R. R. Co.* v. *Cowdery, 11 Wall. 459; Hotel Co.* v. *Wade, 97 U. S. 13; Alexander* v. *Central R. R. Co. of Iowa, 3 Dill. 487; Brooks* v. *Vermont Central R. R. Co., 14 Blatchf. 463; Mercantile Trust Co.* v. *Lamoille R. R. Co., 16 Blatchf. 324; Wilmer* v. *R. R. Co., 2 Wood 447.*

Such a suit ordinarily would be in behalf of the complainant and other bondholders, but in the present instance it appears that the interest on bonds, other than those of complainant, has been paid.

The bill in this suit is filed on the theory that the principal as well as the interest has become due. By its terms, the mortgage is not due until the year 1900, but the bill charges that—

"the interest not having been paid, and remaining unpaid for a period of more than six months, that by virtue of the covenants and the terms and conditions in said mortgage contained, the principal sums and all interest thereon has become due, payable and collectible, and said mortgage, and the estate thereby granted, has become absolute;"

and it prays that the defendants may be decreed to pay the principal as well as the interest on the bonds.

This mortgage does not contain a provision which is common in railroad mortgages, that on default in the payment of interest and continuation thereof for a certain time, the principal should become due either absolutely or at the option of the trustees.

The court can only require the performance of the agreement of the parties, and cannot impose new terms. It can enforce the payment of a debt only according to the terms of the contract. If no clause accelerating the maturity of the debt is inserted the court cannot engraft one on the contract, and where one exists its

provisions must be strictly followed. In *Randolph* v. *Middle-- ton, 11 C. E. Gr. 546,* the contract provided that in cases of a default in the payment of interest for a certain length of time the principal should, at the election of the trustees, become immediately due and payable. There was nothing in the case to show that the trustees had exercised their right of election, and the court held that the principal money was not due until that election had been made. See, also, *Howell* v. *Railroad Co., 94 U. S. 463.* In *Ohio Central Railroad Co.* v. *Central Trust Co., 133 U. S. 83,* the decree, which was in effect for a deficiency, was opened as being erroneous in this, that it included the amount of principal which was not by the terms of the mortgage due.

It is claimed, however, that the principal must be considered as due from the provisions of the mortgage conferring upon the trustee certain powers in case of default in payments. These provisions are substantially—first, that in case of a default in the payment of interest continuing for three months, or, second, in case of default in the performance of any other covenant continuing for a period of six months, the trustees may take possession of the road and operate it, and from the proceeds pay the expenses, repairs and interest on the bonds and any principal which may then be due and the balance to the railroad company.

Third, as follows:

"In case default shall be made as aforesaid, and shall continue for the period of six months as aforesaid, it shall likewise be lawful for the said trustees or their heirs &c., after entry as aforesaid, or other entry, or without entry, personally or by their attorneys or agents, to sell and dispose of all and singular the railroads, lands, personal property and premises hereby conveyed, or intended so to be, at public auction in such way, on such terms, at such times and at such places as they shall deem best for the holders of said bonds, first giving 'certain prescribed notice thereof,' and shall apply the whole net proceeds of any and all such sales, from time to time, as realized, to the payment, in the first place, of all interest in arrears on said bonds, respectively, in full, and, in the second place, to the payment and discharge of the principal of said bonds in full if the residue be sufficient for that purpose, but if not, then to distribute and appropriate the same to and among the holders of the said bonds in the ratio of the principal sum of the bonds held by them, respectively, without priority or preference, retaining, however, always, so much of the net proceeds as may be sufficient to meet the expense of this trust, and to indemnify the said party of the second part, their heirs &c., for

or against any liabilities or loss or damage that shall or may occur to them in the execution of this trust, and if there should be any surplus after paying the whole of the principal and interest of the said bonds, and retaining sufficient for such indemnity, then the said party of the second part, their heirs &c., shall pay the same to the said party of the first part, their successors and assigns, and shall reconvey and assign all or any part of the premises hereby conveyed and assigned and not sold and disposed of as aforesaid."

There is, of course, nothing in these articles which, in express words, matures the principal debt for default in the payment of interest for six months, but it is argued that such result must be implied from the fact that the trustee is, by the third article, authorized to sell all the mortgaged property and make payment of the principal. This is, however, substituting the effect for the cause. He does not sell the whole of it because the debt is all due—he sells the whole because the mortgage authorizes him so to do, and pays the principal because he has disposed of all the security. In *Holden* v. *Gilbert, 7 Paige 208*, Chancellor Walworth (at *p. 210*) says: "The provision in the power of sale, giving the right to advertise and sell after a default for thirty days in paying the installments and interest, and the authority, in case of such sale, to retain the whole principal and interest due and to become due, do not change the construction of the mortgage as to the time when the payments are to become payable, so as to authorize a suit upon the bond or a foreclosure of the mortgage in equity." *Olcalt* v. *Bynum, 17 Wall. 44; C. & V. R. R. Co.* v. *Fosdick, supra.*

It is further argued that the trustee having refused to execute the powers conferred on him, and the complainant being entitled on such refusal to bring suit, he stands in the shoes of the trustee, and the court will exercise the powers named in the contract.

This invokes a consideration of the character and effect of such powers.

There are in this mortgage, as there are usually in such instruments, powers of sequestration and of sale. These are recognized remedial incidents of equity jurisdiction, further enforced in this state by section 64 of the Chancery act. *Rev. p. 115.*

They are powers which, of course, could not be assumed by a trustee unless authorized by contract or by statute, but which the court exercises as part of its established jurisdiction and procedure, and which remain unaffected by the contract powers of the trustee. Judge Curtis, in *Hall* v. *Sullivan R. R. Co.*, *2 Redf. Railw. 517* (at *p. 520, note*), says : " Without undertaking to say that the parties may not restrict the right of foreclosure, I consider it clear that the insertion of a power of sale in a deed of mortgage neither deprives the mortgagee of his right of strict foreclosure, when such right would otherwise exist, nor prevents a court of equity from foreclosing by a sale made under its direction, in cases where it finds a strict foreclosure is not a matter of absolute right on the part of the mortgagee, and a strict foreclosure would be inequitable.

" In *Guaranty Trust Co.* v. *Green Cove R. R. Co.*, *139 U. S. 137*, it is held that a provision in the deed of trust, to the effect that neither the whole nor any part of the premises mortgaged shall be sold, under proceedings either at law or equity, for the recovery of the principal or interest of the bonds, it being the intention and agreement of the parties that the mode of sale provided by the mortgage ' shall be exclusive of all others ' is open to the objection of attempting to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the courts, which, as is settled by the uniform consent of authority, cannot be done."

The proceedings provided in the mortgage are, therefore, regarded as cumulative remedies. *Howell* v. *R. R. Co.*, *94 U. S. 466 ; R. R. Co.* v. *Fosdick, 106 U. S. 47 ; Alexander* v. *R. R. Co., 3 Dill. 487 ; F. L. & R. R. Co.* v. *R. R. Co., 27 Fed. Rep. 147 ; Beekman* v. *R. R. Co., 35 Fed. Rep. 3 ; Merchants' Trust* v. *R. R. Co., 36 Fed. Rep. 221 ; Morgan Co.* v. *R. R. Co., 137 U. S. 171.* They are powers reposed in the trustees, often in the alternative, the selection resting in discretion, which can be exercised by them, without the aid of the court, only on the happening of the conditions prescribed. The trustee, if he encounters or anticipates interference in executing the powers conferred, on a proper case being presented, can have the aid of

this court in the administration of the trust. On a vacancy happening in the office of trustee, or on an unjustifiable refusal by the trustees to enforce a remedy, this court, on proper proceedings, can fill the vacancy by appointment, and can compel the trustee to discharge a manifest duty. In this way the powers given by the terms of the mortgage may be indirectly enforced by the court. If, however, the trustee determines not to proceed in the manner authorized by the mortgage, but to bring suit, he then appeals to the established remedies of the court, not the enforcement of those named in the mortgage; so, also, where, on failure of the trustee to act, the *cestui que trust* comes into court in his own name, and invokes the power of the court for the protection of his rights, or to secure that to which he is entitled, he is not entitled to exercise, through the court, the contract powers of the trustee, but is restricted to the remedies furnished by the procedure of the court appropriate to the end desired.

The chief-justice, in *Lodor* v. *McGovern, 3 Dick. Ch. Rep. 275,* with reference to actions maintained by parties on the neglect of those who should protect their rights (at *p. 277*), says: "But while the standing of the complainant in the tribunal to which he has appealed is not open to doubt, the important question necessarily supervenes as to what is the nature and scope of the relief to which he is entitled, this inquiry, it would seem, will be answered as soon as it shall have been precisely ascertained what is the wrong with which the complainant was and is threatened." Applying this principle, that of which complainant has been deprived is his interest, and he is entitled to the aid of the court in the exercise of its accustomed procedure to secure its payment, not to have the court exercise the powers conferred on the trustee.

The case must proceed and be governed by the rule which obtains with reference to the foreclosure of mortgages for the non-payment of interest. In such case the general rule is, that only so much of the property as may be necessary to raise the amount of the interest in default shall be sold. *2 Jones Mort. § 1577; Probasco* v. *Van Epps, 13 Atl. Rep. 598.*

By our statute (*Rev. p. 117 § 74*) it is provided that when the whole of the mortgage money is not due, and it shall appear to the court that a part of the mortgaged premises cannot be sold to satisfy the amount due without material injury to the remaining part of the mortgaged premises, and that it is just and reasonable that the whole of the mortgaged premises should be sold together, it shall and may be lawful for the said court to decree a sale to be made of the whole of the mortgaged premises." This statute has been part of our law since its enactment February 6th, 1819 (*P. L. of 1819 p. 8*), and is a rule which has generally been recognized elsewhere with reference to foreclosures for default of interest.

The bill in this case was not filed with reference to the statute, and no evidence was offered to make it appear that a part of the mortgaged premises cannot be sold to satisfy the amount due as required by the act; but the court must take cognizance of the character of the property covered by the mortgage.

It embraces not only the road-bed and superstructure (personal property there is none), but also the franchise to operate the property as a railroad, and this is part of the security, which would be practically destroyed by disintegration of the plant, while the strip of land with the superstructure would be of little value without the right to use it as a railroad. A moment's consideration forces the conclusion that the property and franchises are so essentially intermingled, and each so indispensable to the value of the other, that they cannot be separated without material injury, if not entirely destroying the value of each.

Judge Shiras, in *Simmons* v. *Taylor, 38 Fed. Rep. 682, 894,* in a dissenting opinion, it is true, makes the following remarks, which must command approval: "The property, however, included in the foreclosure sale, and now sought to be redeemed, was a line of railway, its franchises and appurtenances, consisting of a combination of realty and personalty, which, from its public uses and peculiar nature, require to be sold as an entirety. In ordering a judicial sale of a railway and its appurtenances, a court is compelled to have regard to the peculiar character of the property, and cannot ordinarily treat it as composed of items

·of realty and personalty separate from each other, and salable under the distinct rules that usually govern sales of such differ-ent classes of property.

In *Wilmer* v. *R. R. Co., 2 Wood 409,* the court says : " The railroad with its appurtenances is in the nature of an entirety. As a general rule, it must be evident that to cut up a railroad :and sell it piecemeal would destroy its value."

In *Hommock* v. *Loan and Trust Co., 105 U. S. 77–89,* it is ·said : " Undoubtedly in all such cases the chief value of the real estate comes from the right or franchise to hold and use it, 'in connection with the personal property of· the corporation, for railroad purposes. It is equally true that not only the bonds, ·to secure which the mortgage is given, could not be negotiated in the markets of the country, did not the mortgage embrace as an ·entirety the franchise and all real and personal property of the ·corporation used for railroad purposes, but that a sale of the real ·estate, franchises and personal property separately might, in ·every case, prove disastrous to all concerned and defeat the ends for which the corporation was created with authority to establish and maintain a public highway."

*Muller* v. *Dowes, 94 U. S. 444* (at *p. 449*): "A part of a railroad may be of little value when its ownership is severed from ·the ownership of another part and the franchise of a company is ·not capable of division." See, also, *Wilmer* v. *R. R. Co., supra;* ·*Owens* v. *R. R. Co., 20 Fed. Rep. 10; F. L. and T. Co.* v. *R. R. Co., 27 Fed. Rep. 146.*

The mortgaged property being, from its very character, such that a separation of it into its original parts, in order to raise an .amount snfficient to pay the interest due, must naturally jeopard'ize the security for the principal and accruing interest, and thus ·coming within the contemplation of the statute referred to, the section becomes a rule of procednre authorizing a sale of the whole of the mortgaged premises, although the principal is not ·due by the terms of the mortgage.

It is argued that there should be a reference to ascertain if there is not property which can be sold without material injury :to the security. If there was an allegation in the case, or even

a statement by counsel to that effect, it might be proper to institute such an inquiry in this case, as the bill was filed on the theory that the principal was due, and not under the statute, and the defendant is excusable in not averring in the answer that there was such property disconnected with what is essentially and properly a part of the railroad plant.   Counsel was not in a position to make that statement, and I must, therefore, advise a decree for the amount of interest due and unpaid, and a sale of the mortgaged property.