142 N.J. Super. 90 (1976)
360 A.2d 418
GENERAL ELECTRIC CREDIT CORPORATION, PLAINTIFF,
v.
JAMES P. CASTIGLIONE, T/A J. CARSTE LEASING AND JOSEPH CASTORO AND SOUTH BRUNSWICK ASPHALT, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 4, 1976.
*92 Mr. Roger R. Gottilla for plaintiff (Messrs. Eichler and Forgosh, attorneys; Mr. Gottilla on the brief).
Mr. Coleman T. Brennan for defendants Joseph Castoro and South Brunswick Asphalt (Messrs. Cahill, McCarthy and Hicks, attorneys; Mr. Brennan on the brief).
STEIN, J.C.C., Temporarily Assigned.
The novel question presented by this case is whether a creditor under a retail installment contract can collect the entire unpaid contract balance from the defaulting debtor in the absence of an acceleration clause.
Alternatively, the creditor contends that the individual guarantors to this retail installment agreement have an obligation broader in scope and greater than that imposed upon the original contracting debtor.
This is a suit for a claimed deficiency following default under a lease-purchase agreement. The chattel which is the *93 subject matter of the lease-purchase agreement is a 1973 Mack Tandem Axle dump truck.
When this case was assigned for trial, counsel for the parties stipulated that there was no substantial question of material fact and that the matter should be treated as if cross-motions for summary judgment had been filed.[1]
The lease-purchase agreement was entered into on or about March 23, 1973, between defendant James P. Castiglione, t/a Carste Leasing (Carste), and plaintiff General Electric Credit Corporation (GECC). Under this agreement, entitled "Lease Agreement  Vehicle and (Retail Installment Contract  Lease)," Carste agreed to pay the sum of $45,813.15[2] to plaintiff in 45 equal monthly installments of $1,018.07 with the final payment due on March 23, 1978.[3] After making the 45th payment, Carste had the option to purchase the dump truck for the sum of $1.
On the same date individual guarantees were executed by defendants James Castoro (Castoro) and Castiglione individually, and South Brunswick Asphalt, a New Jersey corporation.
In March 1974 Carste was two monthly payments in arrears and plaintiff declared the lease in default. Thereafter, on November 1, 1974, plaintiff obtained the truck by writ of replevin. Plaintiff then expended $882 in repairing the vehicle and an additional $175 in an unsuccessful attempt to *94 auction the truck. Plaintiff then sold the dump truck for $17,000, an amount stipulated as $1,000 in excess of its fair market value. Additionally, plaintiff had received two months' advance rental, or $2,036.14, at the time the lease was entered into and which, of course, it retained after Carste's default.
Plaintiff claims that the net amount of $17,097.14 received after sale of the truck does not satisfy Carste's obligation under this lease agreement. What plaintiff claims as due and owing is $25,317.18[4] broken down as follows:

 $34,614.38 balance of time rental balance at time of default
 (original amount: $45,813.15)
less 17,000.00 sales price
 __________
 17,614.38
less 277.08 seller's participation costs
 __________
 $17,337.30
plus 882.00 repairs
 175.00 auction costs
 __________
 $18,394.30
plus 6,922.88 attorneys' fees
 __________
 $25,317.18

Defendant Carste has not answered this complaint. The claim of plaintiff is resisted by the guarantors of the lease-purchase agreement, Castoro and South Brunswick Asphalt.
Notwithstanding the language of the "lease-purchase agreement," it is clear that the parties contemplated entering into a secured transaction under the provisions of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq. A financing statement was filed with the New Jersey Secretary of State listing plaintiff as the secured party and *95 Carste as the debtor, and covering the dump truck as the secured item. The motor vehicle certificate of ownership listed Carste as the owner of the dump truck and plaintiff as the secured party. Finally, Carste had an option under the "lease" to purchase the truck for $1 after making all installment payments. This is further evidence that the parties intended this to be a secured transaction. See N.J.S.A. 12A:1-201(37) which provides that a lease is one intended for security where the lessee "has the option to become the owner of the property for no additional consideration or for a nominal consideration * * *."
Looking behind its verbiage and legalisms, it is obvious that the "lease-purchase" agreement between GECC and Carste was simply a mechanism for plaintiff to finance Carste's purchase of a new dump truck from the vendor, Central Jersey Mack Sales. Pastorek v. Lanier Systems Co., 249 So.2d 224, 227 (La. App. 1971); cf. Frito-Lay, Inc. v. United States, 209 F. Supp. 886, 889 (N.D. Ga. 1962).
The critical provision of the lease-purchase agreement is § 9(a), which purports to fix the rights and obligations of the parties in the event of default. It provides in relevant part:
If Lessee shall be in default in the payment of any rent or other sums, payable by Lessee hereunder and shall fail to cure such breach within ten (10) days, * * * Lessor may declare this Lease in default. * * * Lessee hereby authorizes Lessor at any time thereafter to enter with or without legal process any premises where the Vehicle(s) may be and take possession thereof. Lessee, without further demand, shall pay to Lessor an amount which together with any security deposit hereunder then held by Lessor and not applied against any other obligation of Lessee to Lessor is equal to any unpaid rent due on or before Lessor declares this lease to be in default plus, as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Fair Market Value of the Vehicle(s) on the date of the declaration of default. * * * Thereupon, Lessor may sell the Vehicle(s) at public or private sale, * * * or Lessor may lease, otherwise dispose of or keep idle all or any of the Vehicle(s); * * *. The proceeds of sale, lease or other disposition, if any, shall be applied (1) to all costs and charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of the Vehicle (s); then (2) to the *96 extent not previously paid by Lessee, to pay Lessor the Fair Market Value of the Vehicle(s) and all other sums, including any unpaid rent; then (3) to reimburse to Lessee any such sums previously paid by Lessee as liquidated damages; (4) any surplus shall be retained by Lessor and any deficiency with respect to (1) and (2) shall forthwith be paid by Lessee.
Under § 9 (a), the amount fixed as due and owing by the lessee (Carste) to the Lessor (GECC) was $16,000, calculated as follows:

 $ 2,036.14 amount due at time of default (two monthly
 payments at $1,018.07)
 16,000.00 fair market value
 __________
 $18,036.14
less 2,036.14 amount held as security deposit (advance rental
 payment)
 __________
 $16,000.00

Application of the sales proceeds of $17,000 should have been applied as follows, pursuant to § 9 (a):

 $ 882.00 repair of vehicle
 175.00 auction costs
 15,943.00 towards fair market value of $16,000
 __________
 $17,000.00

This left a balance due and owing to plaintiff of $57.[5]
Plaintiff, however, contends that its pursuit of the dollar does not end with analysis of § 9(a). It calls attention to *97 § 9(b) of the lease-purchase agreement, which provides:
All remedies hereunder are cumulative and any or all thereof may be exercised in lieu of or in addition to any remedies at law, in equity or under any statute. * * *
This provision, says plaintiff, must be read together with N.J.S.A. 12A:9-504(2), which provides that
[i]f the security interest secures an indebtedness, * * * unless otherwise agreed, the debtor is liable for any deficiency. * * *
Such combination of contract clause and statute, claims plaintiff, obviates the need for a specific acceleration clause, thus making due and owing the entire unpaid installment contract balance.
The difficulty with plaintiff's argument is that the deficiency is fixed by § 9(a) of the lease-purchase agreement  a deficiency calculated at $57 when the formula established by § 9 (a) is applied. Nowhere does the lease-purchase agreement provide for the balance of the entire rental price to become due and owing upon default.[6]
Absent a clause providing for the accelerated maturity of all installment payments upon default, there can be no such acceleration. To be enforceable the option to accelerate must be clear and certain. It will not be supplied by mere inference. Krosnowski v. Krosnowski, 22 N.J. 376, 383 (1956).
Applicable to this case is the language in a mortgage foreclosure case, The Pennsylvania Co. v. Broadway-Stevens Co., 105 N.J. Eq. 494 (Ch. 1930):
It may be regarded as settled in this state that default of a mortgagor in the payment of interest or taxes, or in the performance *98 of other covenants of the mortgagor will not be operative to accelerate the date fixed for the payment of the principal debt in the absence of a specific stipulation of the parties to that effect in the mortgage. This was specifically determined in McFadden v. Mays Landing and Egg Harbor City Railroad Co., 49 N.J. Eq. 176 (at pp. 185, 186), and it does not appear since to have been questioned. That adjudication was upon the well recognized theory that this court can only require the performance of the agreement of the parties, and cannot impose new terms. * * * [at 496]
To the same effect, see Baltimore v. Clark, 131 N.J. Eq. 290, 291 (Ch. 1942), aff'd 132 N.J. Eq. 374 (E. & A. 1942); Vanderhoof v. Crosby, 11 N.J. Misc. 389, 390, 166 A. 337 (Sup. Ct. 1932); Andrews v. Liberty Nat. B. & T. Co. of Oklahoma City, 463 P.2d 953, 957-958 (Okl. Sup. Ct. 1969).
As is stated in 1 Anderson, Uniform Commercial Code (2 ed. 1970), § 1-208:3 at 188:
In the absence of an acceleration provision in an instrument, the instrument is payable as written and the time of payment is not accelerated by the happening of other events not specifically agreed upon; and when there is reasonable doubt as to the meaning of the terms of a provision for acceleration, preference is given to such construction as will deny the right to accelerate in order to avoid the harshness of such action.
Adoption of the Uniform Commercial Code has no effect upon the rule requiring existence of an acceleration clause as a prerequisite to recovery of the entire purchase price upon default. The Code does recognize the validity of acceleration clauses under certain circumstances, if such a clause is expressly set forth in the instrument. See N.J.S.A. 12A:1-208, which provides:
A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. * * * [Emphasis added]
*99 Clearly, the UCC makes no provision for the automatic acceleration upon default of installment payments not yet due. The Code did not build an acceleration clause into every installment contract involving personal property. Such a provision remains a matter of agreement between the parties to the instrument. Anderson, op. cit., § 1-208:3 at 188.
What makes this case unique is the absence of an acceleration clause in the lease-purchase agreement here under scrutiny. The usual insertion of such provisions in retail installment contracts most likely accounts for the paucity of cases dealing with the effect of the absence of such a clause. However, in what plaintiff in this case might regard as an unhappy coincidence of facts and parties, there is a case on point in another UCC jurisdiction.
In General Electric Credit Corp. v. Bankers Comm. Corp., 244 Ark. 984, 429 S.W.2d 60 (1968), the Arkansas Supreme Court held that the absence of an acceleration clause in a lease-purchase agreement limited the creditors to recovery of unpaid installments then actually accrued. Acceleration of the total price was precluded by failure of the creditors to include such a provision in their contracts.
As authority for the proposition that an acceleration clause is not a prerequisite to recovery of the unpaid balance from a defaulting debtor, plaintiff relies upon certain language in Associates Discount Corp. v. Palmer, 47 N.J. 183 (1966). In that case Justice Proctor stated that a deficiency suit
* * * is nothing but a simple in personam action for that part of the sales price which remains unpaid after the seller has exhausted his rights under Article 9 by selling the collateral; it is an action to enforce the obligation of the buyer to pay the full sale price to the seller, an obligation which is an essential element of all sales and which exists whether or not the sale is accompanied by a security arrangement. * * * [at 187]
Associates Discount involved a suit for a deficiency after sale of a voluntarily repossessed automobile. The amount *100 of the claimed deficiency was never in dispute. Justice Proctor pointed out at the very beginning of his opinion (at 185) that the sole question on appeal was whether plaintiff's suit was brought within the applicable statute of limitations. The presence or absence of an acceleration clause was never raised or discussed. For that reason, Associates Discount is not dispositive of this matter.[7]
Plaintiff inserted no acceleration clause in its lease-purchase agreement. Without such a clause the installment payments cannot be accelerated upon default. The deficiency is fixed at $57.
Plaintiff next argues that even if a suit for all unpaid installments cannot be sustained, defendant guarantors are nonetheless liable for the entire uncollected balance. This, says plaintiff, is because the guarantee is broader than the lease itself, and imposes even greater monetary obligations upon the guarantors than the lease imposes upon the lessee.
The guarantees executed by defendants Carste and South Brunswick Asphalt are separate documents attached to the lease-purchase agreement. Both provide in pertinent part that "to induce" plaintiff to enter into a lease, with plaintiff as lessor and Carste as lessee, each guarantor does guarantee to plaintiff
* * * [T]he due, regular and punctual payment of the total rental as provided in the Lease, whether it represents an original balance, a balance reduced by part payment, or a deficiency after sale of equipment or otherwise, and do hereby further guarantee that the Lessee will faithfully perform and fulfill all agreements and obligations provided in the Lease at the time and in the manner therein provided. [Emphasis added]
Liability of a guarantor is generally measured by that of his principal, and is so construed unless a lesser or *101 greater liability is expressly assumed by the guarantor. Walter E. Heller & Co. v. Allen, 412 S.W.2d 712, 721 (Tex. Civ. App. 1967); 38 C.J.S. Guaranty § 43 at 1192. A guarantee contract will be strictly construed, Garfield Trust Co. v. Teichmann, 24 N.J. Super. 519, 527 (App. Div. 1953), and will be interpreted most strongly against the party which has prepared and offered it for execution. St. Paul Fire & Marine Ins. Co. v. N.J. Bank & Trust Co., 104 N.J. Super. 367, 372 (Law Div. 1969), certif. den., 59 N.J. 265 (1971); First New Jersey Bank v. F.L.M. Bus. Machines, 130 N.J. Super. 151, 156 (Law Div. 1974).
As with other written instruments, the proper construction of a guarantee
* * * is the one which appears to be in accord with justice and common sense and the probable intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end. * * * [Krosnowski v. Krosnowski, supra, 22 N.J. at 387]
Where, as here, several writings are essentially made as part of one transaction relating to the same subject matter, they may be read together as one instrument, and the recitals in one may be amplified or limited by reference to the other. Schlossman's, Inc. v. Radcliffe, 3 N.J. 430, 435 (1950); Lawrence v. Tandy & Allen, 14 N.J. 1, 6 (1953).
These guarantees were prepared by plaintiff and offered to the guarantors for signature. Both the lease and the retail installment agreement were signed on the same day. Both guarantees  identical in language  refer to the lease-purchase agreement and specifically state that the purpose of execution is to induce plaintiff to enter into this agreement with Carste, the lessee. There is no reason to believe that the parties intended to extend the obligations of guarantee beyond those of the lease-purchase agreement. It is clear that the obligations of defendant guarantors are coextensive with, and no greater than, those of the lessee.
*102 Section 9(b) of this agreement provides that in event of default, the lessee is required to pay
* * * as reasonable attorneys' fees twenty (20%) percent of the rent then remaining unpaid on the fair market value of the Vehicle(s) at the time Lessor declared Lessee in default, whichever is greater, if such attorneys' fees are permitted by law, or if prohibited by law, such lesser sum as may be permitted. * * *
The "rent then remaining unpaid" at the time of default was $34,614.38. Twenty percent of this amount would permit plaintiff to recover attorneys' fees in the amount of $6,922.88. Twenty percent of the truck's fair market value of $16,000 would allow recovery of $3,200 in attorneys' fees. With only $57 recoverable to plaintiff from defendants, an award of attorneys' fees for either amount is clearly unconscionable. Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N.J. 435, 438 (1965); Cohen v. Fair Lawn Dairies, Inc., 44 N.J. 450, 452 (1965). The reasonableness of an attorneys' fee should take into consideration the amount of money involved and the results obtained. DR 2-106(A) (4). Counsel fees will be limited to 20% of plaintiff's recovery or $11.40.[8]
Plaintiff is entitled to judgment in the amount of $57, the balance due, plus $11.40 in attorneys' fees, or a total of $68.40.
NOTES
[1] Earlier, plaintiff had filed a motion for summary judgment which had been denied. Further stipulations by the parties as to additional facts now make the matter ripe for summary judgment disposition.
[2] $34,870.00 total rental
 46.00 filing and bookkeeping charge
 10,897.15 finance charge
 __________
 $45,813.15 total time rental price

[3] The reason that 60 months were given to make 45 payments is because no payments were to be made in February, March or April of 1974, 1975, 1976 and 1977, apparently in recognition of Carste's inability to pay in those "slow" business months.
[4] Plaintiff's affidavit in support of its motion for summary judgment improperly calculated this figure due as $25,320.04. A review of the figures listed in this affidavit indicates an evident miscomputation.
[5] Or analyzed another way:

 $ 882.00 amount due plaintiff under section 9(a) (1) for repairs
 175.00 amount due plaintiff under section 9(a) (1) for auction
 costs
 16,000.00 amount due plaintiff as fair market value upon sale
 under section 9 (a) (2)
 __________
 $17,057.00 total amount due plaintiff
 $17,000.00 amount received on sale
 57.00 net due plaintiff under § 9(a)(4) and (1)

[6] The right of acceleration cannot be spelled out from the clause in § 9(a), which declares that, minus certain setoffs or credits, the obligation of the Lessee is "[e]qual to any unpaid rent due on or before Lessor declares this lease to be in default * * *."
[7] At oral argument before this court counsel for defendants represented that the installment agreement in Associates Discount did in fact contain an acceleration clause. Counsel for plaintiff later (at least implicitly) accepted this representation by letter to the court.
[8] This award of attorneys' fees is in no manner intended to reflect upon the quality of the services rendered by counsel for plaintiff. Counsel for both sides are to be commended for the quality and extensiveness of their legal research, and for the intelligent and vigorous pursuit of their respective clients' causes, both in briefs and at oral argument.