FIRST NATIONAL STATE BANK OF NEW JERSEY, A NATIONAL BANKING ASSOCIATION ORGANIZED UNDER THE ACTS OF CONGRESS, ASSIGNEE OF DOLPHIN EQUIPMENT LEASING CORP., PLAINTIFF-RESPONDENT, v. CONGRUENT MACHINE CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT AND THIRD PARTY PLAINTIFF-APPELLANT, v. VINCENT LA MELA, HAROLD MISON, BILL OSMUN, TED CARBONE, JOSEPH EPSTEIN, MARTIN LIPMANN, RICHARD HECHT, AARON EPSTEIN, THIRD-PARTY DEFENDANTS-RESPON-DENTS.

Superior Court of New Jersey
Appellate Division

Argued October 3, 1979—Decided October 12, 1979.

568

Before Judges FRITZ, KOLE and LANE.

*Mr. Frank T. Luciano* argued the cause for appellant Congruent Machine Co., Inc.

*Mr. Arthur C. Linderman* argued the cause for respondent First National State Bank of New Jersey (*Messrs. Raff* and *Scheider, attorneys;* Mr. Arthur C. Linderman, *on the brief*).

*Mr. Stephen D. Cuyler* argued the cause for respondents Vincent LaMela, Harold Mison, Bill Osmun, Ted Carbone, Joseph Epstein, Martin Lipmann and Aaron Epstein (*Messrs. Stryker, Tams & Dill,* attorneys; *Mr. Stephen D. Cuyler* on the brief).

*Mr. Ronald G. Neiwirth* argued the cause for respondent Richard Hecht (*Messrs. Neiwirth & Neiwirth,* attorneys; *Mr. Ronald G. Neiwirth* on the brief).

PER CURIAM.

Defendant Congruent Machine Co., Inc. appeals from an order for partial summary judgment dismissing the third-party complaint against Richard Hecht, an order for summary judgment dismissing a counterclaim against plaintiff and entering judgment in favor of plaintiff in the amount of $66,832.87 and costs, and an order for summary judgment dismissing the third-party complaint against third-party defendants Vincent LaMela, Harold Mison, Bill Osmun, Ted Carbone, Joseph Epstein, Martin Lipmann and Aaron Epstein.

The action was brought to recover a deficiency following defendant's default under what was termed a lease agreement. Defendant counterclaimed to recover damages allegedly sustained because the sale of the equipment involved was commercially unreasonable, and further counterclaimed and cross-claimed to recover damages because at the sale plaintiff and third-party defendants, including the auctioneer, conspired to form a bidding ring to preclude defendant and other persons from offering a fair and reasonable bid on the equipment.

Summary judgment was granted in favor of the auctioneer on the ground that there was no genuine issue as to any material fact challenged and no evidence that the auctioneer was part of the alleged bidding ring. We affirm that summary judgment substantially for the reasons set forth by the trial judge.

Summary judgment was granted in favor of plaintiff and the other third-party defendants on the ground that the affidavits submitted and the other papers before the court raised no issue as to an illegal conspiracy to frustrate bidding at the sale and no evidence that the sale was commercially unreasonable. We affirm the grants of summary judgment substantially for the reasons set forth by the trial judge, except as to the amount of the deficiency.

The agreements that form the basis of the action are security agreements rather than leases. *N.J.S.A.* 12A:1–201(37); *Peco, Inc. v. Hartbauer Tool & Die Co.*, 262 *Or.* 573, 500 *P.2d* 708 (Sup.Ct.1972). The agreements provide in Paragraph 17 that in the event of default the secured party may:

(a) Proceed by appropriate court action or actions, . . . to recover damages for the breach of such covenants and terms hereof; or

(b) By notice in writing to the Lessee terminate this lease, . . . and take possession thereof and thenceforth hold, possess and enjoy the same free from any right of Lessee or its successors or assigns, . . . but Lessor shall nevertheless have a right to recover from Lessee any and all amounts including rents which, under the terms of this lease may be then due and be unpaid hereunder for use of said items of Equipment together with any damages in addition thereto which Lessor shall have sustained by reason of the breach of any covenant or covenants of this lease, together with attorney's fees, as hereinafter provided, and such expenses as shall be expended or incurred in the seizure of items of Equipment or in the enforcement of any right or privilege hereunder or in any consultation or action in such connection. Lessor may sell the Equipment with notice, or without notice where permitted by law, at private or public sale, at which Lessor may purchase without having the Equipment at the sale, and the proceeds thereof less expenses of retaking, repairing, reselling and reasonable attorney's fees will be credited upon unpaid rentals; . . . and any deficiency shall be paid by Lessee with interest. . . .

That paragraph further provided that in the event of default the secured party would be entitled to an amount equal to 20% of the sums due for legal fees and expenses.

Defendant contends that the only amount plaintiff could recover in the deficiency action was the amount of the "rents" due at the time plaintiff repossessed the equipment. Plaintiff, on the other hand, contends that it is entitled to judgment for

the payments that remain due under the agreement; in other words, that there should be an acceleration. The trial court rendered judgment based upon the theory of plaintiff.

■ It is clear that Paragraph 17 grants the secured party the right to resell the equipment and to recover any deficiency from the debtor. The agreements provide that the secured party can not only recover the "rents" that are then due but also damages. There can be no acceleration of the payments due under the agreement. *General Electric Credit Corp. v. Castiglione,* 142 *N.J.Super.* 90, 97 (Law Div. 1976). The total amount due under the agreements represented both the sale price of the equipment and interest costs. Subtracting the amount obtained upon re-sale from the amount due under the agreements at the time of the default would unduly inflate the damages of the secured party.

The problem is discussed in *White and Summers, Uniform Commercial Code,* § 7–6 (1972):

> In certain circumstances the courts must adjust the resale contract price to put it on a footing comparable to the original contract. If, for example, the original contract called for payment of $20,000 (including interest) in semi-annual install-ments over three years but the resale contract required total payment of $12,000 in cash, the court could not simply subtract the price received in the second case from the total time price in the first case and get a fair result. The court must adjust for the credit factor in the original contract. The present value of $20,000 to be paid in six semi-annual payments over three years would be much less than $20,000. The cash resale price should be subtracted from the present value of the $20,000 in order to get the correct damage figure. [at 218–219]

■ The damages suffered by plaintiff should be calculated by determining the value of the security agreements at the time of the default, subtracting from that figure the amount received on the resale and adding legal interest from the time of the default to the time of the judgment. The judgment should include the expenses of repossession and sale, and attorneys' fees and costs limited to 20% of the amount found due. In the fixing

of attorneys' fees, see *Cohen v. Fair Lawn Dairies, Inc.,* 44 *N.J.* 450, 452 (1965).

The judgments appealed from are affirmed except for the provision in the order of June 8, 1978 entering judgment in favor of plaintiff in the amount of $66,832.87, which is vacated. The matter is remanded for redetermination of the amount due plaintiff. We do not retain jurisdiction. No costs.