**SHEET METAL WORKERS LOCAL #76 CREDIT UNION, Respondent,**

v.

**Paul C. HUFNAGLE, Appellant.**

**No. 50115.**

Supreme Court of Minnesota.

July 3, 1980.

Thompson, Lovett, Wahlfors & Moran and James L. Wahlfors, Bloomington, for appellant.

Briggs & Morgan, Gerald L. Svoboda and Michael H. Streater, St. Paul, for respondent.

Heard before KELLY, YETKA and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Defendant, Paul C. Hufnagle, the maker of a $70,000 promissory note, appeals from a judgment granting plaintiff, Sheet Metal Workers Local # 76 Credit Union (hereafter Credit Union), judgment in the amount of the unpaid balance due on the note, plus interest. Hufnagle gave the note to the Credit Union on June 30, 1975, in connection with his purchase from the Credit Union of 1,313 shares of stock in the Phalen Park State Bank. The Credit Union held these shares as security for the amount due it on the note and sold them in partial satisfaction of the judgment after its entry. On appeal, defendant argues that the parties' agreement required plaintiff to sell the collateral as full satisfaction in the event of a default and that the trial court improperly ordered judgment in the full amount of the unpaid balance, despite the absence of a clause granting the Credit Union acceleration in case of default. We affirm in part, reverse in part.

Defendant Hufnagle is the president of the Phalen Park State Bank. On June 30, 1975, he entered into an agreement to purchase from plaintiff Credit Union 1,313 shares of stock in the Phalen Park State Bank for $60 per share, a total of $78,780. It appears that he made the purchase as something of a favor to the Credit Union but also at rather favorable terms. Defendant paid $8,780 immediately and signed a promissory note by which "[f]or value received," he agreed to pay $8,000 on June 30 of each year from 1976 to 1984 and six percent interest on the balance then due on December 31 of each year. The note contained a provision for sale of the collateral but made no express provision for acceleration of payments in the event of default.

No attorney participated in drafting this Purchase Agreement and Promissory Note. However, both Mr. Hufnagle and Mr. Albert Louismet, the Credit Union officer who represented the Credit Union in this transaction, are men of considerable experience in financial matters. Mr. Hufnagle drafted the documents and indicated that he typed them himself. Despite his expressed reluctance to enter into the agreement, Hufnagle testified that the documents at issue, the Purchase Agreement and the Promissory Note, fairly and accurately reflected the parties' agreement and conceded that he had expressed no objections to the terms of these documents at the time they were executed.

Hufnagle made the initial $8,780 payment required by the agreement but failed to make the $8,000 payment due in June of 1976. Albert Louismet, who saw defendant frequently, spoke to him several times about the delinquent payment. In July 1976, defendant paid $3,200; in September, he paid $1,000. On May 17, 1977, Louismet wrote to Hufnagle demanding a $2,725.71 interest payment. Believing that the contract provided for the Credit Union to take back the bank stock in full satisfaction of

the debt in the event of default, Hufnagle responded by letter of May 20, 1977, as follows:

I am sorry to advise you that as of this time I am unable to do anything with regard to my obligations to your organization and have no idea when in the future I will be able to take care of this matter.

I think it would be appropriate if you took the relief provided in our contract.

At Louismet's suggestion, Hufnagle attended the June 15, 1977, meeting of the Credit Union's Board of Directors. Hufnagle testified that he explained at that meeting that he was unable to make payments, that the Credit Union understood his desire that it "take the stock back," that it was "okay" with them, and that he agreed to the Credit Union's request that the stock continue in his name for some time longer. Louismet and two other Credit Union officers, however, testified that no promises were made at the June 15 meeting.

Two issues are raised by the appeal:

(1) Did the agreement of the parties giving the secured creditor the option to sell "any and all of the collateral for said note in satisfaction thereof" in the event of default provide an exclusive remedy precluding the creditor from proceeding to judgment on the note and applying proceeds from the sale of the collateral to the unpaid balance?

(2) Did the trial court err in allowing recovery of the full unpaid balance on a promissory note having no acceleration clause?

■ 1. Defendant argues that the parties' agreement gave the Credit Union an exclusive remedy in the event of default, sale of the Phalen Park State Bank shares in full satisfaction of the note. He relies on the final paragraph of the note, which provides:

Upon default by Maker of any of the foregoing covenants the Credit Union, may at its option upon 30 days written notice to the Maker, sell at public or private sale any and all of the collateral for said note in satisfaction thereof.

The trial court, citing the parol evidence rule, refused to hear testimony regarding Hufnagle's and Louismet's understanding of this final paragraph. Then, finding the "in satisfaction" expression ambiguous, the court ruled against Hufnagle, the drafter of the instrument, rejecting his argument that the note provided for sale of the collateral in full satisfaction as exclusive remedy in the event of default.

Respondent Credit Union argues that had Hufnagle, a man experienced in banking and financial matters, wanted to make return of the collateral the Credit Union's exclusive remedy, he would have drafted the note more clearly to that effect. Rather than "[u]pon default * * * the Credit Union *may at its option* [sell the collateral]," he could have written "*must, without option*" and could have provided that sale of the collateral be in "full satisfaction" of the note. The Uniform Commercial Code (hereinafter UCC) supports respondent's position. The remedies available to creditors in security agreements are ordinarily cumulative and non-exclusive. *See* Minn. Stat. § 336.9–501 (1978). The Minnesota Code Comment notes that this section "reverses prior Minnesota conditional sales law," under which a conditional seller who summarily repossessed the collateral was held to have elected his remedy and waived his right to an action for the price. *See Yellow Manufacturing Acceptance Corp. v. Handler*, 249 Minn. 539, 83 N.W.2d 103 (1957). Moreover, the UCC provision for disposition of collateral "in satisfaction of" an indebtedness contemplates less than full satisfaction: "A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral * * * and, unless otherwise agreed, the debtor is liable for any deficiency." Minn.Stat. § 336.9–504(1), (2) (1978).

Hufnagle notes that the Credit Union refused to return the bank shares to him when he requested them during discovery proceedings. Assuming that the parties had agreed that the Credit Union would accept the stock in satisfaction of its debt,

Hufnagle cites *Yellow Manufacturing* to support his argument that, by refusing to return the stock at his request, the Credit Union had elected its remedy and waived its right to an action on the note. A number of courts have addressed the doctrine of election of remedies under the Uniform Commercial Code and have determined that, under the code, the secured creditor may enforce the debt although he retains the collateral in his possession. *See* 4 R. Anderson, *Uniform Commercial Code*, § 9-501:4 (2d ed. Supp.1979) and cases cited therein. The court in *Ruidoso State Bank v. Garcia*, 92 N.M. 288, 290, 587 P.2d 435, 437 (1978) stated that abolishing the doctrine of election of remedies was the "obvious purpose" of UCC § 9-501. In *Garza v. Allied Finance Co.*, 566 S.W.2d 57 (Tex.Civ. App.1978), the court rejected an "election of remedies" argument, stating that, under the UCC,

> [t]he holder of a secured note is not required to exhaust his remedies against the security before enforcing the debt against the original maker, but he may proceed to judgment against the maker without reference to such security whether the security is in the form of a pledge of collateral or a mortgage on real or personal property.

566 S.W.2d at 62. *Accord, Rose's Mobile Homes, Inc. v. Rex Financial Corp.*, 383 F.Supp. 937 (W.D.Ark.1974); *Keller v. La Rissa, Inc.*, 586 P.2d 1017 (Haw.1978).

We are satisfied that the trial court's ruling regarding this issue was correct. The parties did not agree to a sale of the collateral as the Credit Union's exclusive remedy and did not agree to an election of remedies. Any waiver of rights expressly provided by the UCC would have to be demonstrated by clearer evidence than that presented here, a Promissory Note provision that the Credit Union "may at its option" sell "any and all of the collateral" in the event of default. In light of the fact that Hufnagle himself drafted the note, and the testimony of members of the Credit Union's Board of Directors, whose approval was required before the note could become effective, that no promises to take back the stock

in full satisfaction of the note were made, we hold that the note here does not clearly waive the UCC allowance for cumulative non-exclusive remedies in the event of default.

■ 2. The parties' agreement provided for periodic payments through 1984, and defendant was in default in the amount of $19,200 at the time of trial. The agreement made no express provision for acceleration of payments in the event of default. Nevertheless, the trial court entered judgment in the full amount of the promissory note, plus interest.

The Credit Union defends this ruling as an application of the contract doctrine of anticipatory breach. Under that doctrine, one party's refusal to perform a contract before the time for performance gives the injured party the right to treat the entire contract as broken and sue immediately for damages. In *Engel v. Mahlen*, 153 Minn. 1, 189 N.W. 422 (1922), the doctrine was involved to allow the plaintiff to recover the payment he made to defendant land vendors when they repudiated their sales contract with him.

American courts traditionally have applied the doctrine of anticipatory breach only to contracts involving "interdependent obligations." "[The doctrine] does not generally apply to 'mere promises to pay money, or other cases of that nature where there are no mutual stipulations.'" 17 Am. Jur.2d *Contracts* § 455 (1964). *See Rishmiller v. Prudential Insurance Co.*, 192 Minn. 348, 353, 256 N.W. 187, 189 (1934). In *Palmer v. Watson Construction Co.*, 265 Minn. 195, 121 N.W.2d 62 (1963), where a construction contractor sought recovery for anticipated lost profits as well as payment for work already completed, we recognized the traditional exclusion of money contracts from the anticipatory breach doctrine: "We are committed in this state * * * to the rule that nonpayment of installment obligations is not in and of itself such prevention of performance as will make possible suit for loss of profits even though the party entitled to payment may lack working capital." 265 Minn. at 203, 121 N.W.2d at 67.

The Credit Union argues that the exclusion of "money contracts" from the anticipatory breach doctrine is outdated, now that money, like other commodities, has market value which may vary. There is some authority for plaintiff's position in the decisions of other jurisdictions. In *Hoyt v. Horst*, 105 N.H. 380, 201 A.2d 118 (1964), for example, the court allowed plaintiff to bring an action for the entire amount of a loan that had not yet all become due under circumstances where "[t]here was not the slightest indication that any further installments would ever be received by the plaintiff." 105 N.H. at 389, 201 A.2d at 124. It may pose an onerous burden to require plaintiff to wait until 1984, or to bring a series of expensive and unpredictable lawsuits to collect the amount owed it, in view of the fact that there may be no less mutuality of obligation in money contracts than in others to which the doctrine has been applied. *See Phelps v. Herro*, 215 Md. 223, 233–42, 137 A.2d 159, 165–70 (1957) (Hammond, J., dissenting); Note, *Anticipatory Repudiation: Anachronistic Limitations*, 8 Duke L.J. 165 (1959).

It may be that the exclusion of installment payment obligations from the anticipatory breach doctrine should be reconsidered. The doctrine requires, however, that the party from whom recovery is sought clearly manifest his repudiation of the contract. In *Pitts v. Wetzel*, 498 S.W.2d 27, 28 (Tex.Civ.App.1973), a case cited by the Credit Union, for example, defendant debtor told the plaintiff creditor "that he never intended to repay her." In the instant case, by contrast, defendant Hufnagle has never unequivocally repudiated his obligations on the note. By his counsel he conceded default at the start of trial. In 1976, Hufnagle told Louismet he would "do the best he could" and did make two payments. Louismet told him at that time that the Credit Union would "work with him" to help him meet his obligations. In May 1977, he recognized his "obligations" to the Credit Union, although he was unable to meet them. Defendant testified on cross-examination as follows:

Now, as I understand it, your position is, as you sit here today, that you don't owe anything on the note—the promissory note, is that correct?

A. If they have taken back the stock I do not owe anything on the note, that's correct.

Q. As a matter of fact you don't intend to pay anything on the note either, do you?

A. No sir. If this Court were to find that they haven't taken back the stock I would do everything in my power to pay the note. I can't tell you that I would be able to, just as I wasn't able to make those payments when I was supposed to. I would have liked to have been able to make them but I can't.

Q. So it's at least true that you are unable to make payments on the note as it exists today?

A. That's correct.

Since defendant has never unequivocally repudiated the note or indicated he does not feel bound by it, we need not address the question of whether an exclusion to the anticipatory breach doctrine for installment payment contracts remains appropriate.

Ordinarily, the problem created by the exclusion of installment payment contracts is solved by the drafters' inclusion of an "acceleration clause," providing that the full amount of the obligation shall automatically become due in the event of the maker's default. Such clauses were expressly contemplated by the drafters of the UCC, Minn.Stat. § 336.1–208 (1978).[1] No such clause appears in the Promissory Note in this case.

The Credit Union argues that provision for acceleration is implicit in the controversial last paragraph of the Promissory Note which allows sale of "*any and all* of the collateral" in the event of default. We cannot, however, accept this argument that the note thus provides for acceleration implicitly. In *Kiewel Securities Co. v. Knut-*

---

1. *See generally* Note, *Acceleration Clauses in Sales and Secured Transactions: The Debtor's* *Burden Under Section 1–208 of the U.C.C.*, 11 B.C. Ind. & Com.L.Rev. 531 (1970).

**264**

*son,* 169 Minn. 291, 211 N.W. 1 (1926), this court reiterated with approval its earlier holdings requiring an express acceleration clause to appear in a note in order for the holder to obtain judgment against the maker before the note falls due.

In *General Electric Credit Corp. v. Castiglione,* 142 N.J.Super. 90, 360 A.2d 418 (1976), the secured party sought to recover the entire unpaid contract balance on a purchase agreement in which the debtor was in default. The court refused to find an acceleration provision implicit in the lease purchase agreement:

> Absent a clause providing for the accelerated maturity of all installment payments upon default, there can be no such acceleration. To be enforceable the option to accelerate must be clear and certain. It will not be supplied by mere inference. * * *

142 N.J.Super. at 97, 360 A.2d at 422.

Where it is not clearly required by the terms of the installment payment contract, we must presume acceleration is not intended. *See* 1 R. Anderson, *Uniform Commercial Code,* § 1–208.3 (2d ed. 1970). To the same extent that Hufnagle, an experienced businessman, could have been expected to provide clearly for sale of the collateral as exclusive remedy, so Louismet could have included a provision for acceleration in the event of default if this was his intent. On these facts, we must hold that plaintiff is entitled to judgment only for the amount by which defendant is in default, and remand for findings as to the exact amount in default and the amount of interest payments owed.

Affirmed in part, reversed in part, and remanded.