# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1067

_____

Scott H. Lansing,

*Plaintiff - Appellant,*

v.

Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Southwest,
N.A., formerly known as Wachovia Mortgage, FSB, formerly known as World
Savings Bank, FSB,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2018
Filed: July 5, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth
Circuit Rule 47E.

COLLOTON, Circuit Judge.

This appeal arises from a third lawsuit between Wells Fargo Bank and Scott Lansing involving foreclosure on Lansing's property at 12015 Mayflower Circle in Minnetonka, Minnesota. In this case, after Wells Fargo foreclosed on the property, Lansing alleged that the bank violated Minn. Stat. § 582.043 when it continued with foreclosure proceedings after Lansing had submitted an application for a loan modification. Wells Fargo brought a counterclaim against Lansing for breach of a prior settlement agreement, and then moved for judgment on the pleadings. The district court[1] ruled for Wells Fargo, concluding that *res judicata* barred Lansing's claims and that Wells Fargo was entitled to judgment as a matter of law on its counterclaim. The district court also denied Lansing leave to amend his complaint, and dismissed Lansing's complaint with prejudice. Lansing appeals, and we affirm.

I.

In 2004, Lansing executed and delivered a note, secured by a mortgage, to World Savings Bank, FSB, in the amount of $203,500.00. World Savings Bank, FSB, changed its name to Wachovia Mortgage, FSB, and then merged with Wells Fargo in 2009. Under the merger, Wells Fargo acquired the mortgage interest in Lansing's property. In late 2009, Lansing defaulted under the terms of the note and the mortgage by failing to make monthly payments. Wells Fargo initiated a foreclosure by advertisement, resulting in a sheriff's sale of the property on August 30, 2011.

After the 2011 foreclosure sale, Lansing sued Wells Fargo in Minnesota state court for alleged violations of Minnesota's foreclosure statutes and sought to set aside

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Janie S. Mayeron, United States Magistrate Judge for the District of Minnesota.

the sale. Wells Fargo removed the case to federal court, and the parties eventually settled the case in April 2013. Under the settlement agreement, which was described on the record at a hearing before a magistrate judge, Wells Fargo agreed to rescind the foreclosure sale in exchange for Lansing's dismissal of the lawsuit. The parties further agreed to reinstate the previously existing mortgage so that Wells Fargo could proceed with re-foreclosure. Lansing "waive[d] the right to challenge any deficiencies in the future foreclosure."

The magistrate judge noted that it would be "appropriate" for the parties to memorialize their agreement in writing, and said that the court would resolve any future disputes over wording. Thereafter, Lansing affirmed that he understood that the agreement was "a final and fully enforceable settlement even in the absence of signatures." After the hearing, counsel for the parties exchanged drafts of a written settlement agreement, but the parties never signed an agreement.

On June 14, 2013, Wells Fargo commenced a second foreclosure on Lansing's property by filing a complaint in Minnesota state court. Lansing, represented by counsel, filed an answer on August 2, 2013. The parties engaged in discovery, and on January 3, 2014, Wells Fargo moved for summary judgment. Lansing wrote a letter to the court on January 24, 2014, explaining that his counsel had withdrawn on January 10, 2014, contrary to Lansing's wishes.

On January 31, 2014, the state court held a hearing on Wells Fargo's motion for summary judgment. Lansing appeared *pro se*. On March 20, 2014, the court granted summary judgment for Wells Fargo and awarded it a decree of foreclosure on the property. Wells Fargo then purchased the property at a sheriff's sale.

Lansing appealed the grant of summary judgment to the Minnesota Court of Appeals. He argued for the first time that Wells Fargo had improperly proceeded with foreclosure, in violation of Minn. Stat. § 582.043, after Lansing submitted a loan

modification application. According to Lansing, he faxed Wells Fargo an application on November 21, 2013, at which point Wells Fargo had a legal obligation to cease foreclosure proceedings. The court of appeals rejected Lansing's argument and affirmed the judgment for Wells Fargo. The court of appeals ruled that Lansing's claim under § 582.043 was not properly before the court, because Lansing had failed to raise it in the trial court. Alternatively, the court reasoned that there was no evidence in the record that Lansing ever submitted a modification application.

On August 24, 2015, Lansing, acting *pro se*, commenced this third lawsuit. He alleged, among other things, that Wells Fargo violated Minn. Stat. § 582.043 when it proceeded to seek a foreclosure judgment after receiving Lansing's loan modification documents. Wells Fargo removed the action to the federal district court and filed a counterclaim for breach of contract. According to Wells Fargo, because Lansing agreed not "to challenge any deficiencies in the future foreclosure," he breached the settlement agreement by opposing the 2013 judicial foreclosure and filing the instant complaint. Wells Fargo moved for judgment on the pleadings. Lansing moved for leave to amend his complaint to allege breach of contract against Wells Fargo on the ground that the bank violated the settlement agreement by taking "bad faith actions" on Lansing's loan modification requests.

The district court granted judgment on the pleadings for Wells Fargo on Lansing's claims and Wells Fargo's counterclaim, denied Lansing leave to amend his complaint, and dismissed Lansing's complaint with prejudice. The court concluded that *res judicata* barred Lansing's claims, that he had violated the April 2013 settlement agreement by continuing to challenge the foreclosure, and that his proposed breach of contract claim was futile. The parties stipulated to no damages on Wells Fargo's counterclaim, and the district court entered final judgment.

Lansing appeals. We review the district court's grant of judgment on the pleadings *de novo*. *Elnashar v. U.S. Dep't of Justice*, 446 F.3d 792, 794 (8th Cir.

2006). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). We review the district court's decision to deny Lansing leave to amend his complaint for abuse of discretion. *Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015).

II.

Lansing first contends that *res judicata* does not bar his claim that Wells Fargo violated Minn. Stat. § 582.043 by proceeding with foreclosure despite an application for loan modification. Under Minnesota's doctrine of *res judicata*, the disposition of an earlier claim bars the litigation of a subsequent claim where "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (alteration in original) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). "Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action." *Id.* (quoting *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007)).

Lansing urges that the first requirement is not met because his claim under Minn. Stat. § 582.043 involves a different set of factual circumstances than the 2013 foreclosure action. He argues that Wells Fargo's 2013 foreclosure action involved Lansing's failure to make mortgage payments, while Lansing's § 582.043 claim involves Wells Fargo's failure to process his loan modification request and to cease foreclosure proceedings. Lansing asserts that the factual circumstances that gave rise to his § 582.043 claim did not occur until "well after" Wells Fargo initiated the 2013 foreclosure.

-5-

We reject this contention because Lansing's § 582.043 claim is a challenge to the very foreclosure that was the subject of the 2013 civil action. Lansing could have asserted this claim during the 2013 litigation as an affirmative defense to the foreclosure that he now seeks to nullify. We agree with the district court that "Wells Fargo's right to foreclose on the Property and Lansing's right to challenge the foreclosure on the Property arose out of the same factual predicates." Both claims arose out of Lansing's failure to make payments under the terms of the note and mortgage held by Wells Fargo.

Lansing relies on *Lundquist v. Rice Memorial Hospital*, 238 F.3d 975 (8th Cir. 2001) (per curiam), a case applying federal law, for the proposition that claims arise from different factual circumstances if a second cause of action arises after a first lawsuit is filed. In *Lundquist*, an employer terminated the plaintiff's employment after she filed a first lawsuit alleging disability discrimination, and it was not possible for the plaintiff to bring a wrongful termination claim in the first lawsuit. *Id.* at 978. Here, although Lansing's proffered defense to foreclosure arose only after Wells Fargo commenced 2013 foreclosure proceedings, the case was still pending when Lansing allegedly requested a loan modification, and Lansing does not explain why he could not have raised the defense before the foreclosure case was resolved. We thus conclude that the first prerequisite for *res judicata* in Minnesota—that the claims involved the "same set of factual circumstances"—is satisfied here. *Laase*, 638 F.3d at 856.

Lansing next asserts that he did not have a "full and fair opportunity" to litigate his § 582.043 claim in the prior action. He argues that he could not have raised the claim earlier because Wells Fargo deprived him of an opportunity to raise defenses to foreclosure when it refused to allow adequate discovery. Lansing, however, does not identify evidence that Wells Fargo refused to engage in discovery or explain adequately why any deficiencies in discovery hindered him from so much as pleading an affirmative defense under § 582.043.

-6-

Insofar as Lansing argues that he lacked a full and fair opportunity to litigate the § 582.043 claim because he was proceeding *pro se*, we disagree. Minnesota courts will not apply *res judicata* when "there were significant procedural limitations in the prior proceeding," such as a lack of jurisdiction, or when "effective litigation was limited by the nature or relationship of the parties," such as when a party enjoys sovereign immunity. *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (quoting *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990)); *see also Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 199-200 (Minn. 2000) (jurisdiction); *Breaker v. Bemidji State University*, 899 N.W.2d 515, 524-25 (Minn. Ct. App. 2017) (sovereign immunity). A plaintiff's *pro se* status, however, is not an analogous limitation and does not deprive the plaintiff of a full and fair opportunity to litigate. Parties proceeding *pro se* are not exempt from the doctrine of claim preclusion.

Lansing was not prevented from raising his § 582.043 claim during the 2013 foreclosure litigation, and he had an opportunity to litigate the claim fairly if he had timely raised it. Lansing does not dispute that the 2013 foreclosure proceedings involved the same parties as this action or that there was a final judgment on the merits in the earlier action. Accordingly, we conclude that Lansing's § 582.043 claim is barred by *res judicata*. The district court properly granted judgment on the pleadings for Wells Fargo.

III.

Lansing next contends that the district court erred in granting judgment on the pleadings for Wells Fargo on the bank's counterclaim for breach of the April 2013 settlement agreement. The district court concluded that Lansing and Wells Fargo entered into a fully enforceable settlement agreement at the hearing before the magistrate judge, where Lansing "agreed to cooperate with the re-foreclosure process and waive the right to challenge any deficiencies in the future foreclosure." The

-7-

district court found that Lansing had breached this agreement by opposing the judicial foreclosure in 2013 and by filing the instant complaint.

A settlement agreement is contractual in nature and "can be enforced by an ordinary action for breach of contract." *Mr. Steak, Inc. v. Sandquist Steaks, Inc.*, 245 N.W.2d 837, 838 (Minn. 1976). To prevail on its claim that Lansing breached the 2013 settlement agreement, Wells Fargo must establish: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). "[A] written agreement is not a prerequisite to the enforcement of a settlement." *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990).

Lansing contends that he did not breach the settlement agreement because the parties did not intend Lansing's waiver of future claims to extend to claims related to loan modification requests. He notes that the settlement agreement was silent on the issue of loan modifications. The parties, he says, did not "anticipate that Wells Fargo would refuse to consider a loan modification request by Lansing, or that Wells Fargo would not suspend the foreclosure process if it received such a modification request." At the very least, Lansing argues, the settlement agreement is ambiguous as to the intended scope of his waiver of future claims, so the court erred in entering judgment on the pleadings for Wells Fargo. We disagree.

"The objective of judicial interpretation of disputed provisions of a contract is to ascertain and give effect to the parties' intention." *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975). Courts may ascertain the parties' intent "upon consideration of the agreement as a whole and the plain meaning of the language used, viewed in the light of the surrounding circumstances, endeavoring to arrive at what the parties must have reasonably contemplated." *Id.*

The plain language of the settlement agreement shows that the parties intended Lansing's waiver to include claims relating to loan modification. The parties agreed that Lansing would "waive the right to challenge *any* deficiencies in the future foreclosure." Having chosen to cover "any" deficiencies, without qualification, the parties did not need to delineate loan modification requests or anything else. Lansing's position that deficiencies are waived only if mentioned specifically would render the waiver provision a nullity, because no specific deficiencies were mentioned.

Lansing says that he is not liable for breaching the agreement because Wells Fargo committed an anticipatory breach of contract by refusing to reduce the settlement agreement to writing. Lansing did not plead this allegation in his complaint, and he did not file a response to Wells Fargo's counterclaim, so the assertion was not properly presented to the district court.

In any event, Wells Fargo's alleged conduct was not an anticipatory breach of the agreement. Under the doctrine of anticipatory breach in Minnesota, "one party's refusal to perform a contract before the time for performance gives the injured party the right to treat the entire contract as broken." *Sheet Metal Workers Local No. 76 Credit Union v. Hufnagle*, 295 N.W.2d 259, 262 (Minn. 1980). Here, the parties expressed their intent to reduce the agreement to writing, and the court deemed this plan "appropriate," but there is no showing that the parties intended written memorialization to be a *term* of the contract. Thus, Wells Fargo's alleged refusal to reduce the settlement agreement to writing was not a "refusal to perform a contract." *Id.* As Lansing was not discharged from his obligation to perform under the settlement agreement, the district court properly granted judgment on the pleadings for Wells Fargo on its counterclaim for breach of contract.

IV.

Lansing complains finally that the district court erred when it denied him leave to amend his complaint. On appeal, Lansing characterizes his proposed amended complaint as adding a claim for anticipatory breach of contract based on Wells Fargo's supposed refusal to reduce the settlement agreement to writing. But Lansing's proposed amendment added a different claim—namely, that Wells Fargo breached the settlement agreement by failing to respond in good faith to Lansing's loan modification requests. Although leave to amend shall be given freely when justice so requires, *see* Fed. R. Civ. P. 15(a)(2), a district court properly denies leave when a proposed amendment would be futile. *Sorace*, 788 F.3d at 768. The district court concluded that it would be futile for Lansing to amend his complaint, because the April 2013 settlement agreement did not impose obligations on Wells Fargo with respect to loan modification requests. We agree and see no abuse of discretion.

\* \* \*

The judgment of the district court is affirmed.

_____