**PRESTIGE CAPITAL CORP., Plaintiff,**

v.

**MICHIGAN GAGE AND MANUFACTURING, LLC, Michael Porath, and Richard Mast, Defendants.**

**Case No. 09–11111.**

United States District Court, E.D. Michigan, Southern Division.

July 12, 2010.

Jonathan C. Myers, Jaffe, Raitt, Heuer & Weiss, P.C., Southfield, MI, for Plaintiff.

Jay S. Kalish, Farmington Hills, MI, for Defendants.

### OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SETTING CASE MANAGEMENT DEADLINES

DAVID M. LAWSON, District Judge.

Plaintiff Prestige Capital Corporation provides non-traditional financing to business ventures. In 2006, Prestige entered into an agreement to purchase the ac-

counts receivable of a Michigan business with recourse, and also obtained the personal guarantees of the defendants as security for the potential recourse obligation. Prestige has brought suit against the guarantors alleging that some of the accounts it purchased were subject to charge backs, and the obligor has declared bankruptcy. Now before the Court is Prestige's motion for summary judgment, to which the defendants have failed to respond. Prestige's guarantees contain an explicit choice-of-law provision plainly designating the law of New Jersey as the governing rules of decision, but despite that choice, Prestige cited no New Jersey authority in support of its motion. The Court heard oral argument on the motion on April 20, 2010, at which time the Court advised the plaintiff of that deficiency and that the record was incomplete on the issues of the plaintiff's damages. The parties were given time to file supplemental materials. The plaintiff filed a supplemental brief and affidavit on May 4, 2010, which failed to fill the gap in the record on the damages issue. The Court now finds that the plaintiff is entitled to partial judgment as a matter of law on the issue of the defendants' liability. However, the plaintiff has not offered sufficient proof of damages. Therefore, the Court will grant the plaintiff's motion for summary judgment in part and schedule the matter for a trial on damages.

## I.

Plaintiff Prestige Capital Corporation is a nationwide factoring firm that provides financing to small and mid-sized companies who cannot obtain traditional bank financing for any number of reasons. According to the record it presented in support of its motion for summary judgment, Prestige purchased the account receivable of Solar Stamping and Manufacturing, LLC, (Solar) through a Purchase and Sale Agreement (PSA) dated November 29, 2006. In that agreement, Solar agreed to sell to Prestige all of its rights in certain accounts receivable for 75% of their face value. The PSA included fourteen warranties that Solar made concerning the status of the accounts. In relevant part, this provision states as follows:

5. WARRANTIES, REPRESENTATION AND COVENANTS. As an inducement for Prestige's entering into this Agreement and with full knowledge that the truth and accuracy of the warranties, representations and covenants in this Agreement are being relied upon by Prestige, instead of the delay of a complete credit investigation, Seller warrants, represents and covenants that:

. . .

(d) Each Account is an accurate and undisputed statement of indebtedness from an account debtor for a sum certain, without offset or counterclaim and which is due and payable in ninety days or less;

. . .

The warranties, representations and covenants contained in this paragraph 5 shall be continuous and be deemed to be renewed each time Seller assigns Accounts to Prestige. Notwithstanding the provisions contained in paragraph 6 of this Agreement, Prestige shall have recourse against the Seller in the event that any of the warranties, representations and covenants set forth in this paragraph 5 are breached.

Mot. Summ. J., Ex. 1, PSA ¶ 5. According to Prestige, this warranty grants it the right to charge back the account in the event that it learns the account is subject to an offset or counterclaim. The chargeback privilege allows Prestige to seek a total refund from Solar of the amount paid for the specific account, without reassigning the account back to Solar. The PSA

also specifically states that "[t]his Agreement . . . shall be governed and construed in accordance with the laws of the State of New Jersey." *Id.* ¶ 24.

Concurrently with the PSA, Prestige obtained personal guaranties from Michael Porath, Richard Mast, Richard Ignagni, and James Glasgow. The guaranties each state:

> Each of the undersigned hereby personally guarantees and shall be jointly and severally liable for any damages suffered by Prestige Capital Corporation by virtue of the breach of any warranty, representation or covenant made by Seller in paragraph 5 above. Each of the undersigned also personally waives presentment for payment, demand, protest, notice of protest, notice of dishonor and notice of every nature whatsoever.

Mot. Summ. J., Ex. 1, 2, 4.

On February 26, 2007, Prestige obtained an additional guaranty by defendant Michigan Gage and Manufacturing, LLC, signed by Michael Porath as the President and CEO (the "Gage Guaranty"). That guaranty states:

> Each of the undersigned hereby jointly and severally guarantees full, prompt and unconditional payment when due of each and every Liability of the Client to Prestige, now existing or hereafter incurred . . . and the full, prompt, and unconditional performance of every term and condition of any transaction to be kept and performed by the Client. This Guaranty is a primary obligation of the undersigned and shall be a continuing inexhaustible Guaranty without limitation as to the amount or duration. . . .
>
> Upon the happening of any of the following events: the failure of Client to pay when due any Liability of the Client; . . . or an adverse change in the financial condition of the Client or any aforesaid person; or suspension of business of the Client or any aforesaid person; . . . or

any proceeding being commenced by or against the Client or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute; or if an Order for Relief as to the Client or any aforesaid person is entered under the Bankruptcy Code; or if the Client or any aforesaid person is generally not paying their debts as they become due; . . . then and in such event, and at any time thereafter, Prestige may, without notice to the Client or any aforesaid person, make the Liability of the Client immediately due and payable hereunder as to the undersigned, and Prestige shall be entitled to enforce the obligations of the undersigned hereunder.

> . . .

> All rights, powers and remedies of Prestige hereunder and under any agreement between the Client or any Guarantor and Prestige, now, or at any time hereafter in force, shall be cumulative and not alternative, and shall be in addition to all rights, powers and remedies given to Prestige by law. The Guarantors' liability hereunder shall be joint and several.

Mot. Summ. J., Ex. 2, Gage Guaranty. That guaranty includes a forum selection clause through which "[t]he Guarantors . . . irrevocably consent[ ] to the nonexclusive jurisdiction of the Courts of the State of New Jersey or any Federal court in such State in connection with any action or proceeding arising out of or related to this Guaranty." *Ibid.*

According to the plaintiff, several account debtors asserted offsets against a number of the accounts transferred to Prestige under the PSA with Solar. As a result, Prestige collected less from these accounts than it had expected. The plaintiff alleges that it attempted on several

occasions to recover the amounts it had advanced to Solar, but was unable to do so. Eventually, Solar filed for bankruptcy on August 29, 2007. The plaintiff alleges that it asserted its rights in an adversary proceeding in the bankruptcy case but was unable to collect on these accounts through this process.

On January 30, 2008, Prestige and Michigan Gage entered into an additional agreement in which Michigan Gage acknowledged that it was liable to Prestige under the Gage Guaranty for $948,605.21, plus interest and attorney's fees (the "Agreement"). The Agreement specifically acknowledged that the Gage Guaranty remained in effect and established a payment schedule by which Michigan Gage could repay the debt. The schedule called for payments "at the rate of $5,000 per week, payable each successive Friday, commencing February 22, 2008 until August 22, 2008. Thereafter, the remaining open balance of the Indebtedness shall be due and payable in full on September 2, 2008." Mot. Summ. J., Ex. 3, Agreement ¶ 2(a). As with the other documents in this case, the Agreement also included a choice of law clause designating the "laws of the State of New Jersey" at the rules of decision. *Id.* ¶ 7.

The plaintiff avers that Michigan Gage failed to make any of the payments required under the Agreement. On March 25, 2009, the plaintiff filed a complaint against defendants Michigan Gage and Manufacturing, LLC, Michael Porath, Richard Mast, Richard Ignagni, and James Glasgow. In early April 2010, the plaintiff reached a settlement with defendants Ignagni and Glasgow and the Court dismissed them from the case. On February 5, 2010, the plaintiff filed a motion for summary judgment against defendants Michigan Gage, Porath, and Mast. The defendants have not responded.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir.2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine

dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the nonmoving party, after sufficient opportunity for discovery, is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir.1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank,* 350 F.3d 558, 564 (6th Cir.2003) (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson,* 477 U.S. at 252,

106 S.Ct. 2505) (internal quote marks omitted).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must satisfy that burden. *Vance v. Latimer,* 648 F.Supp.2d 914, 919 (E.D.Mich.2009); *see also Stat–Tech Liquidating Trust v. Fenster,* 981 F.Supp. 1325, 1335 (D.Colo.1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"); *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3d Cir.1992). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 477–78 (1992) (footnote omitted).

This case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the plaintiff's claim is based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not decided an issue, then "the

federal court must ascertain the state law from 'all relevant data.' " *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant dicta, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F.Supp.2d 669, 674 (E.D.Mich.2001) (internal quotes and citation omitted).

### A.

■ As noted above, the guarantees signed by the defendants contain choice-of-law provisions requiring the application of New Jersey law. Federal courts sitting in diversity apply the choice-of-law rules of the forum state (in this case, Michigan choice-of-law rules). *Equitable Life Assur. Soc. of United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir.1998). When a contract contains a choice-of-law clause, "Michigan choice of law rules require courts to examine the factors articulated in sections 187 and 188 [of] the Second Restatement [of Conflicts]." *Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc.*, 297 F.Supp.2d 972, 977–78 (W.D.Mich.2004) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 122–25, 528 N.W.2d 698 (1995)). Under Section 187, "[t]he first step of analysis . . . is to determine whether the contractual parties could have resolved the particular issue being litigated by an explicit provision in the contract. If they could have, then the choice of law provision is enforceable." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir.2006). "[B]oth Michigan choice-of-law rules and general equitable choice-of-law policies support enforcing parties' agreed-upon choice-of-law clauses absent any strong public policy concerns to the contrary." *Bennett v. Am. Online, Inc.*, No. 06–13221, 2007 WL 2875169, at *13 n. 6 (E.D.Mich. Sept. 28, 2007) (citing *In re Dow Corning Corp.*, 419 F.3d 543 (6th Cir.2005)).

■ The choice-of-law provisions in the guaranties certainly could have been the subject of negotiations and resolved by the explicit language included in the agreements. *See Durden*, 448 F.3d at 923. Michigan law requires the Court to enforce the parties' agreements concerning the body of law governing their contracts, unless there is a strong policy reason for not doing so. *See Bennett*, 2007 WL 2875169, at *13 n. 6. There is none here. To the contrary, New Jersey clearly has a relationship to this conflict, as the plaintiff is a New Jersey resident. In addition, New Jersey law is substantially similar to Michigan law concerning the construction and enforcement of guaranty agreements. New Jersey law, therefore, governs.

### B.

■ Under New Jersey law, a guaranty is a contract. New Jersey courts have held that "[t]he rules governing the construction of contracts generally are to be referred to . . . in resolving a question as to the interpretation of a contract of guaranty." *Garfield Trust Co. v. Teichmann*, 24 N.J.Super. 519, 95 A.2d 18, 22 (N.J.Super.App.Div.1953); *see also Center 48 Ltd. P'ship v. May Dep't Stores Co.*, 355 N.J.Super. 390, 810 A.2d 610, 618–19 (N.J.Super.App.Div.2002); *First Bank & Trust Co. v. Siegel*, 36 N.J.Super. 207, 115 A.2d 152, 153 (N.J.Super. Law Div.1955). Under New Jersey law, the elements of a valid contract are: (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *See, e.g., Oscar v. Simeonidis*, 352 N.J.Super. 476, 800 A.2d 271, 276

(N.J.Super.App.Div.2002). However, "[i]f the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation." *Shebar v. Sanyo Bus. Sys. Corp.,* 111 N.J. 276, 544 A.2d 377, 383 (1988). To obtain a judgment on a guarantee, "a plaintiff must demonstrate the following: 1) execution of the guarantee by the guarantor ...; 2) the principal obligation and terms of the guarantee; 3) the lender's reliance on the guaranty in extending monies to the borrower; 4) default by the principal obligator; 5) written demand for payment on the guarantee; and 6) failure of the guarantor to pay upon written demand." *United States ex rel. Small Bus. Admin. v. DelGuercio,* 818 F.Supp. 725, 727–28 (D.N.J.1993). "Where ... several writings are essentially made as part of one transaction relating to the same subject matter, they may be read together as one instrument, and the recitals in one may be amplified or limited by reference to the other." *Gen. Elec. Credit Corp. v. Castiglione,* 142 N.J.Super. 90, 360 A.2d 418, 424 (N.J.Super. Ct. Law Div.1976) (citing *Schlossman's, Inc. v. Radcliffe,* 3 N.J. 430, 70 A.2d 493 (1950), and *Lawrence v. Tandy & Allen,* 14 N.J. 1, 100 A.2d 891 (1953)).

■ The plaintiff has offered specific evidence that the defendants signed the guaranties; the promises contained therein required payment in the event that Solar did not make good on its recourse obligations; Prestige relied on the guaranties in purchasing the accounts without performing a time-consuming audit of the accounts' validity; the guarantors' liability was triggered by Solar's default and subsequent bankruptcy; the guarantors were notified of their obligation to pay; and the remaining defendant guarantors have not paid. The defendants have not responded to the plaintiff's motion and therefore have not contested the plaintiff's allegations.

However, the plaintiff has the ultimate burden of persuasion at trial and must demonstrate the absence of a genuine issue of material fact by presenting sufficient evidence to carry its ultimate burden at this early stage on all the elements of its claim, including damages. The plaintiff alleges that it has suffered more than $880,000 in damages as a result of the defendants' failure to pay under the guaranty agreements, but it failed to supply any evidence in its motion papers of the accounts it purchased, the offsets claimed against those accounts, or any amounts the plaintiff has been able to recover to date.

■ The plaintiff filed a supplemental brief along with an attached two-page affidavit from Alan Eliasof, the plaintiff's vice president and chief financial officer. The brief states the conclusion that Prestige "has suffered, and continues to suffer, substantial damages in the amount of $616,796.36," without interest or costs, and argues that the appropriate remedy under New Jersey law is expectation damages or compensatory damages. Suppl. Br. at 2–3. The only factual support the plaintiff provides for this amount is Eliasof's affidavit, in which he merely states that he has reviewed the books and records and has determined that defendant Michigan Gage & Manufacturing, LLC, owes the plaintiff $616,796.36 plus attorney's fees and costs. There are no facts supporting this naked conclusion; for instance, Eliasof does not discuss the method he used to calculate the amount, he provides no proof the amounts owed by the individual defendants, and he did not furnish any proof of the accounts that breached the warranties given by Solar, which surely the plaintiff could have done since it tried an adversary proceeding in the bankruptcy court involving these same issues. Because the plaintiff carries the burden of persuasion on all the issues

of its claim—including the issue of damages—it must offer evidence at the summary judgment stage that satisfies that burden. The plaintiff's conclusory affidavit falls far short of the mark.

### III.

The Court finds that there is no genuine issue of material fact on the issue of the defendants' liability under the guaranties and the plaintiff is entitled to judgment as a matter of law on that part of its claim. However, despite two opportunities to do so, the plaintiff has not offered sufficient evidence of its damages.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. # 24] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the parties shall appear for a trial to the Court on the issue of damages only on **August 16, 2010 at 8:30 a.m.**